494 A.2d 7

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**William WU.**

Superior Court of Pennsylvania.

Submitted Jan. 17, 1985.

Filed May 31, 1985.

Stuart M. Niemtzow, Deputy Attorney General, Norristown, for Commonwealth, appellant.

Gilbert B. Abramson, Philadelphia, for appellee.

Before OLSZEWSKI, DEL SOLE and JOHNSON, JJ.

OLSZEWSKI, Judge:

When incriminating testimonial information has been lawfully obtained in the course of a good faith civil investigation, may a defendant assert a fifth amendment privilege against its use in a subsequent criminal prosecution?

Appellee, the defendant below, is a dentist. As a dental health care provider, he received reimbursement for his services through the Medicaid Program of the Department of Public Welfare.

The Bureau of Utilization Review, an agency with the DPW, serves as that department's investigative arm. It inspects providers' bills and records to determine whether the providers are adhering to dental practice standards and the bills accurately reflect the services rendered. To that end, the Bureau may review providers' records, interview their patients and issue reports on its investigations. The Bureau can terminate a provider. It cannot, however, institute criminal proceedings. The Bureau must refer the matter for criminal prosecution to the Medicaid Fraud Control Unit of the State Department of Justice.

The Bureau contacted appellee after a computer print-out flagged him as a "high volume biller."[1] Upon investigation, the Bureau discovered a high number of questionable

---

1. The term "high volume biller" is not defined by regulation. As the Bureau investigator explained, "The only relevant thing is by reviewing him in comparison to other dentists in the area."

services performed by appellee. Subsequent in-mouth examinations of the patients revealed discrepancies between the services billed and those actually provided. During a visit to appellee's office, November 12, 1981, a Bureau investigator procured patient files. On February 8, 1982, a Director of the Bureau referred the case to the Medicaid Fraud Control Unit of the Attorney General's Office.

Appellee was arrested February 10, 1983 and charged with Medicaid Fraud. 62 P.S. Sec. 1047. Following a preliminary hearing, he was held for court on 29 counts of Medicaid Fraud. The gravamen of these charges is that appellee knowingly submitted fake invoices to the Pennsylvania Medical Assistance Program with the intent to obtain greater remuneration than that he was due. Commonwealth's case rested on a statement made by appellee to Bureau personnel during the November 12, 1981 office visit. At that time, appellee acknowledged preparing or reviewing all billings generated from his dental office. Additionally, on November 17, 1981, appellee wrote a letter which accompanied and explained certain records he was supplying to the Bureau investigator.

■ Appellee filed timely pre-trial motions seeking, *inter alia*, to suppress dental records and statements obtained from him by Bureau personnel. Following an evidentiary hearing on the motions, the Honorable Jacob Kalish issued an opinion and order suppressing use of both the November 12, 1981 statement and the November 17, 1981 letter. From this order, Commonwealth appeals.[2]

**2.** Commonwealth avers that the suppression order "substantially handicaps" the prosecution of appellee. The appeal, therefore, is properly before us. *See Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985) (Commonwealth has an absolute right of appeal to the superior court to test the validity of a pretrial suppression order when the Commonwealth certifies in good faith that the suppression order terminates or substantially handicaps its prosecution.

The lower court in its opinion did not address the November 17, 1981 letter. The logic of his decision to suppress appellee's statements would impel suppression of the letter. We note that the parties assume the letter was suppressed. The point, however is mooted by our decision today.

■ Commonwealth argues that the lower court incorrectly suppressed a statement obtained in the course of a "good faith" investigation by a strictly civil state agency.[3] The lower court, relying on *Interstate Commerce Commission v. Gould,* 629 F.2d 847 (3rd. Cir.1980), had reasoned that "securing the defendant's statements is analogous, for 5th Amendment purposes, to the service upon him of a subpoena with its attendant rights. Obviously, the statements could not be obtained without the complete aid or assistance of the defendant." Equating use of appellee's statement with compulsion of his testimony, the lower court suppressed use of appellee's statement.

Commonwealth distinguishes *Gould* on its facts. That case involved an assertion of Fifth Amendment rights against a civil agency's attempts to compel production of documents. The overt coercion there, injunctive relief to enforce its discovery powers, is conspicuously lacking here. Indeed the argument in the instant case seems to be that the Commonwealth, under the guise of a "good faith" civil investigation, procured incriminating statements from the

**3.** "Good faith" goes to the existence of a legitimate civil purpose for the investigation. *See United States v. Powell,* 379 U.S. 48, 57–58, 85 S.Ct. 248, 254–255, 13 L.Ed.2d 112 (1964). Appellee would have the burden of disproving the actual existence of a valid civil purpose, here the identification and termination of erring health care providers. *See United States v. LaSalle National Bank,* 437 U.S. 298, 316, 98 S.Ct. 2357, 2367, 57 L.Ed.2d 221 (1978).

Testimony of the suppression hearing established a high degree of correlation between the Bureau and the Medicaid Fraud Unit of the Attorney General's Office. The Bureau investigator testified that: "If we see problems with the billings and we think that there may be a possibility of fraud, we refer those cases to the Medicaid Fraud Control Unit;" "We also routinely check Medicaid Fraud (to see) if they have an active case on the provider before we initiate a review of the process;" "If we find a violation of the standards of practice or a violation of record keeping requirement, if there is a substantive number or a substantive nature, we can terminate the provider from the program. If we find billing discrepancies, and if we see a pattern at the end of the review, if the pattern emerges where we feel that there are more cases than might be found by error alone, then we refer those to the Medicaid Fraud Unit to determine if fraud was involved;" "We do (turn the matter over to the Fraud Control Unit), if we have a pattern of many kinds of things that indicates that these discrepancies were limited to extractions and crowns built up."

hapless doctor. So viewed, appellee's failure to assert his rights is understandable. The question then becomes, on the facts of this case, was appellee entitled to be apprised of his rights. Under current case law, it would appear not.

Appellee contends that *Miranda* warnings were due because he was questioned "while the object of an investigation of which he (was) the focus." That argument has been dismantled by our appellate courts. The need for *Miranda* warnings arises only when a person faces "custodial interrogation."

> In Pennsylvania "custodial interrogation" has been interpreted to mean either questioning "while in custody or while the object of an investigation of which he is the focus." Subsequent to these Pennsylvania cases, the U.S. Supreme Court in *Beckwith v. U.S.*, 425 U.S. 341 [96 S.Ct. 1612, 48 L.Ed.2d 1] (1976) explained that the *Miranda* court specifically defined 'focus' for its purposes, as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his action in any significant way."

*Commonwealth v. Markman*, 320 Pa.Super. 304, 318 n. 8, 467 A.2d 336, 343 n. 8 (1983) (citations omitted, emphasis deleted). None of the *Miranda* criteria apply here. Appellee was questioned in his office by an employee of a civil agency. As a condition of his participation in the medical assistance program, appellee was required to make his records available for inspection, review and copying by office personnel. 62 P.S. Sec. 1402(b). At the time of that office visit no criminal prosecution was pending. The investigator had no duty to read appellee the *Miranda* warnings. *See Commonwealth v. Anderson*, 253 Pa.Super. 334, 341, 385 A.2d 365, 368 (1978) (the relevant "compulsion" stems from custody, not from the suspect's perceived need to attend the interview).

Accordingly, we vacate the order of the suppression court and remand the matter for trial.

Jurisdiction is relinquished.

DEL SOLE, J., concurs in the result.