514 A.2d 890

**COMMONWEALTH of Pennsylvania**

v.

**George E. ARNOLD, Appellant.**

Superior Court of Pennsylvania.

Argued June 3, 1986.

Filed Aug. 28, 1986.

344

Anne John, Uniontown, for appellant.

Ewing D. Newcomer, Assistant District Attorney, Union-town, for Com., appellee.

Before CIRILLO, President Judge, and TAMILIA and POPOVICH, JJ.

TAMILIA, Judge:

This appeal follows appellant's conviction, in a non-jury trial, of corrupting the morals of a minor, indecent assault, involuntary deviate sexual intercourse and indecent expo-

sure.   Under the provisions of 42 Pa.C.S.A. § 9718,[1] appellant was sentenced to imprisonment for a term of five to ten years.   He was also ordered to pay prosecution costs, $25 to the Crime Victims Compensation Fund and a fine of $500.

The conduct which formed the basis of appellant's conviction involved sexual contact between a minor child, who resided with her mother, and appellant.   The activity extended over a two-year period beginning when the child was six years old.

In November 1984, appellant, accompanied by the child's mother, met with a caseworker for Children and Youth Services.   Appellant made various inculpatory statements to the caseworker concerning his conduct with the child. The caseworker subsequently contacted the Chief of Police of Luzerne Township, Fayette County, pursuant to the mandatory reporting provisions of the Child Protective Service Law (11 P.S. § 2204).[2]   The police contacted appellant

---

1.  42 Pa.C.S.A. § 9718 provides:
   **§ 9718.   Sentences for offenses against infant persons**
      **(a) Mandatory sentence.**—A person convicted of the following offenses when the victim is under 16 years of age shall be sentenced to a mandatory term of imprisonment as follows:
         18 Pa.C.S.A. § 2702(a)(1) and (4) (relating to aggravated assault)—not less than two years.
         18 Pa.C.S.A. § 3121 (relating to rape)—not less than five years.
         18 Pa.C.S.A. § 3123 (relating to involuntary deviate sexual intercourse)—not less than five years.
      **(b) Eligibility for parole.**—Parole shall not be granted until the minimum term of imprisonment has been served.   1982, Dec. 30, P.L. 1472, No. 334, § 1, effective in 60 days.

2.  11 P.S. § 2204, in pertinent part, provides:
   **§ 2204.   Persons required to report suspected child abuse**
      (a) Any persons who, in the course of their employment, occupation, or practice of their profession come into contact with children shall report or cause a report to be made in accordance with section 6[1] when they have reason to believe, on the basis of their medical, professional or other training and experience, that a child coming before them in their professional or official capacity is an abused child.

      ·     ·     ·     ·     ·

      (c) Persons required to report under subsection (a) include, but are not limited to, any licensed physician, medical examiner, coroner, dentist, osteopath, optometrist, chiropractor, podiatrist, intern, registered nurse, licensed practical nurse, hospital personnel engaged in

and placed him under arrest. While in custody and after being given his *Miranda* warnings, appellant made inculpatory statements to the police.

Appellant initially filed pre-trial motions seeking to have the reporting provision (11 P.S. § 2204) of the Child Protective Services Act, 11 P.S. § 2201 et seq., declared unconstitutional and his statements suppressed. This motion was denied and appellant petitioned to have the matter certified for appeal. The petition was also denied and appellant was subsequently convicted. Following the denial of post-trial motions and sentencing, this appeal was filed wherein appellant seeks to again challenge the constitutionality of the Child Protective Services Law and also the mandatory sentencing provisions of 42 Pa.C.S.A. § 9718.

Appellant contends the trial court erred in not granting his post-trial motions in arrest of the judgment or for a new trial. This is based on the assertion that the Children and Youth Service's caseworker violated his constitutional rights by not informing him prior to the making of his statements of his *Miranda*[3] rights or of her obligation to report suspected child abuse. He also maintains the statements made to the police were tainted by the illegality of the initial statements and should have been suppressed. Finally he argues that the mandatory sentencing provision of 42 Pa.C.S.A. § 9718 is unconstitutional in that it inflicts cruel and unusual punishment while denying equal protection.

Our review of the briefs and the record in this case leads us to conclude that appellant's claims are without merit.

the admission, examination, care or treatment of persons, a Christian Science practitioner, school administrator, school teacher, school nurse, social services worker, day care center worker or any other child care or foster care worker, mental health professional, peace officer or law enforcement official. The privileged communication between any professional person required to report and his patient or client shall not apply to situations involving child abuse and shall not constitute grounds for failure to report as required by this act.

3. *Miranda v. Arizona,* 384 U.S. 471, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

An Order denying a motion to suppress shall be upheld on review if the factual findings of the lower court are supported by the record and the legal conclusions drawn therefrom are not in error. *Commonwealth v. Otto*, 343 Pa.Super. 457, 464, 495 A.2d 554, 558 (1985) citing *Commonwealth v. Trenge*, 305 Pa.Super. 386, 451 A.2d 701 (1982); *Commonwealth v. Jackson*, 497 Pa. 591, 595, 442 A.2d 1098, 1100 (1982).

We agree with the suppression hearing court that no constitutional violation occurred when appellant made the statements to the caseworker and later to the police.

Appellant alleges the lower court erred in failing to grant his motion for suppression by reason of intrusion into his privacy as to confidential statements made to a child welfare worker who subsequently reported them to the police. Appellant claims there is a privilege of confidentiality and privacy as well as a right against self-incrimination which were violated.

■ The right of privacy in the family setting has never been extended to criminal acts in the family or against or with family members. The pole star cases in recent times on the right to marital privacy are *Griswold v. Connecticut*, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965) and *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed. 147 (1973). The personal intimacies of marriage, procreation, contraception, child rearing, education and family relationships have been held fundamental by the Supreme Court and hence have been encompassed within a constitutional right of privacy. *Id.; Bowers v. Hardwick,* —— U.S. ——, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986). In the Concurring Opinion of Justice Goldberg in *Griswold,* joined by Chief Justice Warren and Justice Brennan, it was stated:

Finally, it should be said of the Court's holding today, that it in *no way interferes with a State's proper regulation of sexual promiscuity or misconduct.* As my Brother Harlan so well stated in his dissenting opinion in *Poe v. Ullman, supra,* 367 U.S. [497] at 553, 81 S.Ct. [1752] at 1782 [6 L.Ed.2d 989]

*'Adultery, homosexuality and the like are sexual intimacies which the state forbids ... but the intimacy of husband and wife is necessarily an essential and accepted feature of the institution of marriage, an institution which the State not only must allow, but which always and in every age it has fostered and protected....'*

*Id.* 381 U.S. at 498–99, 85 S.Ct. at 1689, 14 L.Ed.2d at 523–24.

■ It is inconceivable that incest or sexual abuse of children has ever been considered a "fundamental right" that could fall under the cloak of family intimacies or privacy which enjoy the protection of the constitution. It has been enjoined by every religion, state and body of law in Western civilization from time immemorium. Most recently, the United States Supreme Court, in *Bowers, supra,* disclaimed that the right to privacy included the right to engage in homosexual activity when prohibited by law and went on to say (Justice White speaking for the court):

*Plainly enough, otherwise illegal conduct is not always immunized whenever it occurs in the home. Victimless crimes, such as the possession and use of illegal drugs do not escape the law where they are committed at home. Stanley [v. Georgia, 394 U.S. 557 [89 S.Ct. 1243, 22 L.Ed.2d 542] (1969) where the Court held that the First Amendment permits conviction for possessing and reading obscene material in the privacy of ones home] itself recognized that its holding offered no protection for the possession in the home of drugs, firearms, or stolen goods. Id., at 568, n. 11 [89 S.Ct. at 1249, n. 11]. And if respondent's submission is limited to the voluntary sexual conduct between consenting adults, it would be difficult, except by fiat, to limit the claimed right to homosexual conduct while leaving exposed to prosecution adultery, incest, and other sexual crimes even though they are committed in the home.* We are unwilling to start down that road. (emphasis added)

*Id.* —— U.S. at ——, 106 S.Ct. at 2846. Since no privilege exists within the home to commit the acts complained of, none can be exerted against the police because of the report submitted by the C.Y.S. social worker, resulting in their questioning of appellant. Pursuant to 11 P.S. § 2201 <u>et seq.</u>, the Child Protective Service Law, Children and Youth Service of Fayette County is required to investigate reports of suspected abuse and also under section 2217, each child protective service shall:

(8) Based on the investigation and evaluation conducted pursuant to this act, provide or contract with private or public agencies for the protection of the child in his home whenever possible, and/or those services necessary for adequate care of the child when placed in protective custody. Prior to offering such services to a family, explain that it has no legal authority to compel such family to receive said services, but may inform the family of the obligations and authority of the child protective service to initiate appropriate court proceedings.

(9) In those cases in which an appropriate offer of service is refused and the child protective service determines or if the service for any other appropriate reason determines that the best interests of the child require court action, initiate the appropriate court proceeding.

(10) Assist the court during all stages of the court proceeding in accordance with the purposes of this act.

While this is not a direct mandate on the agency to proceed toward prosecution, it does establish that the agency has the right to initiate court action when it is in the interest of the child to do so. Nothing in the act prevents reports to law enforcement officials when it appears appropriate.

While appellant would have us find that the thrust of the law is treatment of the offender and reporting sexual activity to the police by the C.Y.S. social worker, would have a "chilling effect" on that treatment, the law is clearly from its title and its wording throughout, a "Child Protective Service" law. Nationwide, the difficulty of treating this problem has been recognized and one of the most

serious problems has to do with effective treatment of the abuser and the high rate of recidivism, particularly where prosecution is ineffective. A child quickly becomes the focus of guilt and blame from family members when there is outside intervention for its protection and, short of removal of the child, there is great difficulty in producing effective treatment as proof of the sexual activity is gradually subverted. Prosecution or threat of prosecution is the only vehicle for opening the family dynamics to effective treatment and to protect the child and other members of the family from further abuse. The most difficult problem has been to bring about a workable arrangement between prosecution and treatment, long term, for accommodating the twin goals of treatment and punishment. Without prosecution, it is unlikely there would be treatment; surely there would be no deterrence and without treatment there would be much higher recidivism. As stated above (§ 2217(8)), the law cannot compel treatment, yet must assure the protection of the child.

The law, to accomplish the unique requirements of a legal action in which a child, highly vulnerable because of familial pressure, anxiety and harsh defense trial practices, is the primary witness, has been relaxed to assure effective proceedings. In particular, it eliminated any claim of privilege between husband and wife or between any professional person. Section 2222 of the Act provides:

### § 2222. Hearings and evidence

In addition to the rules of evidence provided under the Juvenile Act the following shall govern in child abuse proceedings in juvenile or family court:

(1) Whenever any person required to report under this act is unavailable due to death or removal from the court's jurisdiction, the written report of such person shall be admissible in evidence in any proceedings arising out of child abuse other than proceedings under the Crimes Code. Any hearsay contained in the reports shall be given such weight, if any, as the court shall determine to be appropriate under all of the circumstances. How-

ever, any hearsay contained in a written report shall not of itself be sufficient to support an adjudication based on abuse.

(2) Except for privileged communications between a lawyer and his client and between a minister and his penitent, *any confidential communication between husband and wife or between any professional person, including but not limited to physicians, psychologists, counselors, employees of hospitals, clinics, day care centers, and schools and their patients or clients, shall not constitute grounds for excluding evidence at any proceeding regarding child abuse or the cause thereof.*

(3) Evidence that a child has suffered serious physical injury, sexual abuse or serious physical neglect of such a nature as would ordinarily not be sustained or exist except by reason by the acts or omissions of the parent or other person responsible for the welfare of such child shall be prima facie evidence of child abuse by the parent or other person responsible for the child's welfare.

1975, Nov. 26, P.L. 438, No. 124, § 22, imd. effective. (Emphasis added)

Spouses as witnesses against each other, 42 Pa.C.S.A. § 5913, provides that a spouse

... shall not be competent or permitted to testify against each other, *except* in proceedings for desertion and maintenance, and in any criminal proceeding against either for bodily injury or violence attempted, done or threatened upon the other, or upon the minor children of said husband and wife, or the minor children of either of them, or any minor child in their care and custody.... (Emphasis added)

Appellant further relies on *In re B.*, 482 Pa. 471, 394 A.2d 419 (1978) to secure the right of privacy between himself and the C.Y.S. social worker. *In re B.* is inapposite as it had to do with the right of a mother who engaged in psychotherapy, to claim personal privilege between patients and their doctors, when her records were subpoenaed by the court to determine her fitness to have her child returned to

her in a dependency proceeding. That opinion applies only to the facts of that case as the plurality was for reversal but without a majority deciding that a parents doctor client privilege extended to a parent in a proceeding vis a vis the child.

The issue of confidentiality is not present here as C.Y.S. is not only a treatment agency but is the investigative arm of the statewide system of Child Protective Services. It is clear from the act that depending upon its findings, it has a wide range of responsibility including initiating court action, if necessary (supra). Thus while appellant was on notice from the law that his statements could be used against him in court actions, and he had no privilege of confidentiality in that regard, he had no right to *Miranda* warnings, as the role of the agency is to protect children and not that of a police agent. There was no compulsion involved in his statements either to the C.Y.S. social worker or the police.

Even in the context of a state or county official receiving an inculpatory statement (*Miranda, supra*), *Miranda* warnings are not required. This controversy was fully resolved by *Minnesota v. Murphy*, 465 U.S. 420, 104 S.Ct. 1136, 79 L.Ed.2d 409 (1984), where a probationer on a different charge, admitted an earlier rape and murder, which was then reported to the police resulting in indictment and successful prosecution to conviction. The court, in an Opinion delivered by Justice White, stated:

> We conclude, in summary, that since Murphy revealed incriminating information instead of timely asserting his Fifth Amendment privilege, his disclosures were not compelled incriminations. Because he had not been compelled to incriminate himself, Murphy could not successfully invoke the privilege to prevent the information he volunteered to his probation officer from being used against him in a criminal prosecution.

*Id.* 465 at 440, 104 S.Ct. at 1149, 79 L.Ed.2d at 428. It is also of significance that in the Murphy case, the first admission of the crime was to an Alpha House drug coun-

selor, who reported to the P.O., who, after talking to the appellant, reported it to the police. In this case, since neither the statement to the C.Y.S. worker or the police was compelled, he cannot claim the privilege.

■ The challenge to the constitutionality of the mandatory sentencing provision of 42 Pa.C.S.A. § 9718 must also fail. The question of whether this section violates the constitutional prohibition against cruel and unusual punishment was discussed in *Commonwealth v. Wildermuth,* 347 Pa.Super. 640, 501 A.2d 258 (1985) where the court refused to accept such an assertion. The United States Supreme Court recently reviewed the Pennsylvania Mandatory Sentencing Statute as it related to "a visibly possessed firearm" and affirmed the power of the legislature to enact mandatory minimum sentences. *See McMillan v. Pennsylvania,* — U.S. —, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986). In doing so, the *McMillan* Court relied heavily on *Patterson v. New York,* 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977) and stated (in *Patterson* ):

> ... [W]e rejected the claim that whenever a State links the "severity of punishment" to "the presence or absence of an identified fact" the State must prove that fact beyond a reasonable doubt. *Id.,* [432 U.S.] at 214 [97 S.Ct. at 2329]; see also *id.,* at 207 [97 S.Ct. at 2325] (State need not "prove beyond a reasonable doubt every fact, the existence or nonexistence of which it is willing to recognize as an exculpatory or mitigating circumstance affecting the degree of culpability or the severity of the punishment").

*Id.* 106 S.Ct. at 2416.

Section 9718(a) of 42 Pa.C.S.A., in providing for a mandatory sentence of five years for the rape of a child under sixteen, does not increase the sentence required by statute nor does it eliminate proof beyond a reasonable doubt of any essential element necessary to convict. Upon proof of the facts of defendants' and victims' ages (which can be established at sentencing by a preponderance of the evidence), the requirement of a minimum sentence is fully

within the legislative powers in determining the severity of punishment. *See McMillan* and *Patterson, supra.*

■ The claim that such a statute violates due process was also rejected in *Wildermuth (also see McMillan* and *Patterson),* thus we conclude that the case is controlling on both the issues raised and requires our rejection of appellant's arguments.

For the reasons stated herein, the judgment of sentence is hereby affirmed.

Judgment of sentence affirmed.