532 A.2d 465

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**Jose A. RAMOS, Appellee.**

Superior Court of Pennsylvania.

Submitted June 2, 1987.

Filed Oct. 13, 1987.

Richard A. Hernan, Jr., District Attorney, Warren, for Com., appellant.

Thomas J. Bonavita, Assistant Public Defender, Warren, for appellee.

Before DEL SOLE, POPOVICH and MONTGOMERY, JJ.

PER CURIAM:

This Commonwealth appeal follows a pretrial order granting appellee's motion to suppress.[1]  The order suppressed

---

1. The Commonwealth has certified that the suppression of appellee's statement terminates or substantially impairs its prosecution. Accordingly, the suppression order is appealable. *Commonwealth v. Dugger,* 506 Pa. 537, 486 A.2d 382 (1985).

all statements made by appellee on June 26, 1986, to a Children and Youth Services (CYS) caseworker while he was incarcerated at the Warren County Prison. For the reasons which follow, we affirm.

On June 23, 1986, Trooper Daniel Portzer, of the Pennsylvania State Police, filed a criminal complaint against appellee charging him with involuntary deviate sexual intercourse,[2] statutory rape,[3] and indecent assault.[4] These charges resulted from sexual contact between appellee and a minor child.

That same day, in connection with a statewide broadcast concerning these charges, appellee was stopped by another state trooper in Clarion County. After receiving information that appellee was being held at the Clarion County jail, Trooper Portzer secured a warrant for his arrest. Upon arriving at the Clarion County jail, Trooper Portzer read both the criminal complaint and the arrest warrant to appellee. He also informed him of his Constitutional rights, as required by *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).[5]

Appellee was then taken before a district magistrate in Clarion County, who advised appellee of his rights, of the charges against him, and of his right to bail. Because appellee was unable to post the required bail, he was returned to Warren County, where the crimes were alleged to have occurred.

After arriving in Warren County, appellee was taken directly to the office of District Magistrate Dalton E. Hunt-

2. 18 Pa.C.S.A. § 3123.

3. 18 Pa.C.S.A. § 3122.

4. 18 Pa.C.S.A. § 3126.

5. It was stipulated by counsel at the suppression hearing that appellee was also given his Miranda warnings upon his initial apprehension in Clarion County.

er. Again, appellee was informed of his Constitutional rights, including his right to bail, and of the charges against him. At this point, appellee executed a written "Application for Assignment of Legal Counsel." [6] Still unable to post the required bail, appellee was committed to the Warren County Prison. When he arrived at the prison, appellee again requested an attorney. Except for this statement and voluntarily answering required administrative questions for identification purposes, appellee refused to respond to questions.

Appellee was continuously confined to a solitary cell where he was subjected to 24 hour observation by use of a closed-circuit camera for three days. Then, on June 26, 1986, appellee was removed to an interview room within the prison. There, John Bowler, a caseworker from the local CYS, introduced himself to appellee. The caseworker explained that he was investigating a report of suspected child abuse, and that his was a civil and not a criminal investigation. Mr. Bowler failed, however, to administer *Miranda* warnings when he met with appellee. [7] As a result, appellee believed, as found by the suppression court, that his conversation with Mr. Bowler would be kept confidential. Appellee then admitted to the incidents giving rise to the charges against him.

The following day, Mr. Bowler mailed written notice, required by law, to Trooper Portzer. [8] Subsequently, Troop-

6. This application was approved by the Court of Common Pleas, Warren County, on June 27, 1986. The Public Defender's Office was appointed to represent appellee on that date, but did not receive the order until June 30, 1986. Thus, despite his request, appellee was without the assistance of counsel for at least one week.

7. The interview was arranged by the CYS worker contacting the prison staff. Prior to meeting with appellee, Mr. Bowler mailed him a notification letter which advised appellee of his right to counsel during any part of the CYS investigation as well as the availability of local legal services for indigents. Bowler knew that appellee had not received this letter before interviewing him.

8. The act provides that all reports
   ... shall be confidential and shall only be made available to: ...
   (4). Law enforcement officials who shall receive reports of abuse in which the initial review gives evidence that the abuse is homi-

er Portzer received a copy of Mr. Bowler's dictated notes of the interview as well as his final written report. These notes and reports contained the statements which appellee sought to suppress.

To better understand how the CYS interview came about, it is necessary to review the relevant portions of the Child Protective Services Law, 11 Pa.C.S.A. §§ 2201, *et seq.* This law requires that each "county children and youth social service agency establish a 'child protective service'...." 11 Pa.C.S.A. § 2216(a). It also mandates certain reporting procedures. Among the persons required to report suspected child abuse to the appropriate child protective service are law enforcement officers. 11 Pa.C.S.A. § 2204(a), (c); 2206(a), (c). Upon receiving such a report, it is incumbent upon the service to commence an appropriate investigation.[9] In conducting their investigation, the CYS "... shall, if possible, conduct an interview with ... the alleged perpetrator of the suspected child abuse, if known." 55 Pa.Code § 3490.55(d)(3). Additionally, the Child Protective Service "shall record in writing the facts obtained as a result of the interview conducted under subsection (d) and any other interview it conducts." 55 Pa.Code § 3409.55(e). Finally, all reports made pursuant to this law are to be made available to law enforcement officers.[10]

cide, sexual abuse or exploitation, or serious bodily injury perpetrated by persons whether related or not related to the victim, or child abuse perpetrated by persons who are not family members. Reports referred to law enforcement officials shall be on such forms provided by and according to regulations promulgated by the department.
11 Pa.C.S.A. § 2215(a)(10).

9. Upon receipt of each report of suspected child abuse, commence within 24 hours, an appropriate investigation which shall include a determination of the risk to such child or children if they continue to remain in the existing home environment, as well as a determination of the nature, extent, and cause of any condition enumerated in such report, and, after seeing to the safety of the child or children, forthwith notify the subjects of the report in writing, of the existence of the report and their rights pursuant to this act in regard to amendment or expungement. The investigation shall be completed within 30 days.
11 Pa.C.S.A. § 2217(4).

10. See, n. 8, supra.

■ The Commonwealth argues that it is improper to require a CYS worker, acting pursuant to the Child Protective Services Law, to advise a defendant of his *Miranda* rights before interviewing him. On the facts of this case, we disagree.

In *Miranda, supra,* the Supreme Court established a conclusive presumption that all confessions or admissions made during a period of custodial interrogation are, intrinsically, compelled in violation of the Fifth Amendment's privilege against self-incrimination. *Miranda v. Arizona,* at 467, 865 S.Ct. at 1624. *See also, Oregon v. Elstad,* 470 U.S. 298, 310, 105 S.Ct. 1285, 1300, 84 L.Ed.2d 222 (1985). The threshold requirements necessitating *Miranda* warnings are custodial interrogation and government involvement. There can be no question in this case that at the time of the questioning by the CYS worker, appellee was in custody; the Commonwealth concedes as much. Appellee was in the Warren County Prison, under arrest, and locked in an interview room with the CYS worker.

We turn then, to the questions of whether the questioning was interrogation within the meaning of *Miranda* and whether the CYS worker's involvement amounted to government involvement. The Commonwealth urges us to conclude that the CYS worker in this case was not required to administer *Miranda* warnings because Mr. Bowler was not working at the direction or the behest of the police and that the statements were obtained in the course of a "good faith" civil investigation. The present case is analogous to *Commonwealth v. Chacko,* 500 Pa. 571, 459 A.2d 311 (1983). There, a prison inmate made an inculpatory statement in response to the prison director's question, "Are you involved in the incident that happened this morning?" The court relied on *Rhode Island v. Innis,* 446 U.S. 291, 100 S.Ct. 1682, 64 L.Ed.2d 297 (1980), and concluded that because such a question was clearly likely to elicit an incriminatory response, and because no *Miranda* warnings had been given prior to the questioning, the statement should

have been suppressed. *Chacko*, 500 Pa. at 579–580, 459 A.2d at 315.

In *Rhode Island v. Innis, supra*, the Supreme Court explained that "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Id.*, at 300, 100 S.Ct. at 1689–1690. The court also noted that the underlying intent of the police was of little importance regarding the latter portion of the definition. *Id.*, at 300–302, 100 S.Ct. at 1689–1690.

More importantly, in *Chacko*, the Commonwealth argued that no *Miranda* warnings were required because the prison director was not a police officer but a member of the internal prison staff. The court rejected the argument as being without merit by reasoning:

> [T]he particular office that the official who performs the custodial interrogation represents is inconsequential because *Miranda* was concerned with official custodial interrogations of an accused and the use of statement obtained from an accused without an attorney in such circumstances to prove the State's case against the accused.

*Commonwealth v. Chacko*, 500 Pa. at 580, n. 3, 459 A.2d at 315, n. 3, *quoting, Battie v. Estelle*, 655 F.2d 692, 699 (5th Cir.1981). In the instant case, the Child Protective Services Law required the CYS worker to forward his report of the case, including notes of the interview, to the police. In fulfilling its purpose of "providing protection for children from further abuse," 11 Pa.C.S.A. § 2202, "CYS is not only a treatment agency, but is the investigating arm of the statewide system of Child Protective Services." *Commonwealth v. Arnold*, 356 Pa.Super. 343, 353, 514 A.2d 890, 895 (1986). In accordance with *Chacko*, therefore, *Miranda* warnings were required.

The Commonwealth's argument that the CYS worker was conducting a "good faith" civil investigation thereby obviating the need for *Miranda* warnings ignores previous decisions of the United States Supreme Court rejecting such distinctions. In *Mathis v. United States*, 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968), the petitioner's conviction of tax fraud was based, in part, on statements and documents which he gave to a government agent while he was in prison serving a state sentence. The Government sought to escape application of the *Miranda* warnings, *inter alia*, because the questions asked of the petitioner were part of a routine civil tax investigation. *Id.* at 3–4, 88 S.Ct. at 1504. In rejecting this argument, the court noted that "[t]hese differences are too minor and shadowy to justify a departure from the well-considered conclusions of *Miranda* with reference to warnings to be given to a person held in custody." *Id.* at 4, 88 S.Ct. at 1505. The court also took note of the fact that tax investigations frequently lead to criminal prosecutions. *Id.* We conclude, therefore, that *Mathis* controls the question of whether *Miranda* warnings are required when, in the course of a civil investigation, questions are put to a person in custody.

We note that the Commonwealth's reliance on *Commonwealth v. Arnold, supra,* is misplaced. *Arnold* is clearly distinguishable from the facts of the instant case. In *Arnold,* the defendant was convicted of crimes stemming from sexual contact with a six-year-old child. On appeal, the defendant unsuccessfully contended that inculpatory statements which he made to a CYS caseworker, who subsequently reported these statements to the police pursuant to the mandatory reporting provisions of the Child Protective Services Law, should have been suppressed. We noted, however, that the defendant was not arrested until after he had *voluntarily* met with the CYS worker who subsequently notified the police. *Id.*, 356 Pa.Superior Ct. at 346–347, 514 A.2d at 895. The instant case differs in that the CYS became involved in the case after appellee was in custody.

92

Likewise, the present case is equally distinguishable from *Commonwealth v. Ziegler,* 503 Pa. 555, 470 A.2d 56 (1983), *Commonwealth v. McLaughlin,* 475 Pa. 97, 379 A.2d 1056 (1977), and *Commonwealth v. Wu,* 343 Pa.Super. 108, 494 A.2d 7 (1985). In each of these cases, an incriminatory statement was made by the defendant in the course of a civil, or administrative investigation. Since each statement was made without prior *Miranda* warnings, the defendant in each case sought to suppress the statement at subsequent criminal proceedings. And, in each case, the court held the defendants' Fifth Amendment rights were not violated as none of them were in custody at the time their respective statements were made.

■ The Commonwealth also contends that appellee's decision to speak with Mr. Bowler was an intelligent, knowing, and voluntary waiver of his rights. What the Commonwealth ignores, however, is that appellee had invoked his right to counsel prior to the CYS conducted interview. *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986), involves a factually similar situation as the instant case. In *Jackson,* one of the respondents was arraigned, and because he was indigent, requested counsel be appointed for him. Like Trooper Portzer in this case, the detective in charge of the respondent's case was present at the arraignment. Counsel was promptly appointed, but before counsel received the notice of appointment, the respondent was interviewed by two police officers while he was in the county jail and confessed. Prior to this interview, the respondent had been given his *Miranda* warnings on three prior occasions, as well as immediately before the interview. The court opined that "the reasons for prohibiting the interrogation of an uncounseled prisoner who has asked for the help of a lawyer are even stronger after he has been formally charged with an offense." *Id.* at 631, 106 S.Ct. at 1408. The court then held that "if police initiate interrogation after a defendant's assertion, at an arraignment or similar proceeding, of his right to counsel,

any waiver of the defendant's right to counsel for that police-initiated interrogation is invalid." *Id.*

Instantly, appellee invoked his right to counsel by completing the "Application for Assignment of Counsel" form. We note that during the proceeding at which appellee invoked his right to counsel, appellee was informed of his Constitutional rights, including the right to counsel, the right to remain silent, and the right to reasonable bail, as well as of the charges against him. Notwithstanding the fact that this proceeding was referred to by Trooper Portzer at the suppression hearing as an informal arraignment, we conclude that, since the primary purposes of arraignment were met, see, Comment, Pa.R.Crim.P. 303, appellee invoked his right to counsel while being arraigned. Following *Jackson*, therefore, appellee's alleged waiver is invalid.

In light of the foregoing, we are constrained to affirm the order suppressing the statements made by appellee.

Order affirmed.