COMMONWEALTH of Pennsylvania,
Appellee,

v.

Kristopher HEGGINS, Appellant.

Superior Court of Pennsylvania.

Argued May 14, 2002.
Filed Sept. 18, 2002.
Reargument Denied Nov. 27, 2002.

James R. Wilson, Public Defender, Pittsburgh, for appellant.

Michael W. Streily, Asst. Dist. Atty., Pittsburgh, for Commonwealth, appellee.

Before FORD ELLIOTT, LALLY–GREEN, and HESTER, JJ.

LALLY–GREEN, J.

¶ 1 Appellant, Kristopher Heggins, appeals from the judgment of sentence entered on October 3, 2000, following his convictions for second-degree murder, robbery, and criminal conspiracy. We affirm.

¶ 2 The record reveals the following facts. The juvenile court assigned Appellant to the North Central Secure Treatment Facility in Danville, Pennsylvania (Danville), following its determination that Appellant was delinquent. N.T., 9/26–29/00, at 24. The purpose of the facility is to counsel juvenile delinquents who have committed felonies or have substance abuse problems. *Id.* Generally, if a juvenile works diligently at the treatment provided at Danville, the juvenile may complete his treatment in nine to twelve months. *Id.* at 40. If the juvenile does not work diligently to rehabilitate himself and prepare himself to reenter society, the juvenile may be confined to Danville until age 21. *Id.* The treatment of the juveniles concerns itself with the general criminal lifestyle the juvenile has engaged in and the juvenile's thought processes regarding crime in general. *Id.* at 43 and 59. The treatment revolves around helping the juvenile to develop remorse for his crime. *Id.* at 47. Upon arriving at the Danville facility, juveniles are informed that any specific information regarding an unsolved crime would be reported to law enforcement. *Id.* at 60.

¶ 3 While at Danville, Appellant made several inculpatory statements regarding his involvement in the murder of Reverend Salvatore Brunsvold, a minister at Carnegie Mellon University who was shot in the head during an armed robbery in the Highland Park area of Pittsburgh. *Id.* at 49–50 and 71. These statements were reported to law enforcement. *Id.* at 45.

¶ 4 The trial court set forth the procedural history as follows:

[Appellant] ... was arrested and charged at CC 20007504 with one (1) count each of Robbery (18 Pa.C.S.A. § 3701) and Criminal Conspiracy (18 Pa. C.S.A. § 903) and at CC 20007508 with one (1) count of Criminal Homicide (18 Pa.C.S.A. § 2501). Following a jury trial he was found guilty of Second Degree Murder, Robbery and Criminal Conspiracy. At a sentencing hearing held before this Court on October 3, 2000, [Appellant] was sentenced to a mandatory term of life imprisonment at the Second Degree Murder charge and to no further penalty at the remaining counts.

Trial Court Opinion, 7/13/01, at 1.

¶ 5 Appellant filed his Notice of Appeal on October 31, 2000. On February 20, 2001, pursuant to Pa.R.A.P.1925(b), the trial court ordered Appellant to file a Concise Statement of Matters Complained of on Appeal (Concise Statement) by March 6, 2001. On March 6, 2001, Appellant petitioned the trial court for an extension of time within which to file the requested Concise Statement. The trial court extended the time frame for Appellant to file his Concise Statement until March 21, 2001. On April 16, 2001, Appellant filed his Concise Statement complaining of six areas of trial court error and trial counsel's ineffectiveness. On April 17, 2001, Appellant filed another Concise Statement complaining of an additional trial court error and another instance of trial counsel's ineffectiveness. The trial court wrote

an opinion pursuant to Pa.R.A.P.1925(a), responding only to the issues raised in Appellant's April 17th Concise Statement. This appeal followed.

¶ 6 Appellant raises the following issues for our review:

I. Did the suppression court err in failing to suppress incriminating statements made by the defendant to youth development counselors while he was in the custody in the Danville Juvenile Detention facility, where those statements were made as a result of custodial interrogation and the defendant was not first informed of his [*Miranda*] rights?

II. Did trial counsel render ineffective assistance in failing to move to suppress an incriminating statement which was first revealed to all of the parties during the evidentiary phase of the trial?

III. May this Honorable Court consider the above two issues in terms of appellate counsel's ineffectiveness in failing to properly raise these precise issues in the previously filed concise statements of matters complained of on appeal?

IV. Did trial counsel render ineffective assistance when he elicited from the defendant the fact that he had prior convictions for harassment and for possession of a firearm where neither of these crimes were relevant to any issue at trial?

Appellant's Brief at 4.

■ ¶ 7 Before we may discuss the issues Appellant raises in this appeal, we must first decide whether the issues are properly before us. As stated above, the trial court ordered Appellant to file a Concise Statement pursuant to Pa.R.A.P. 1925(b). Where an appellant fails to timely file a Concise Statement, all issues to be raised on appeal are waived. *Commonwealth v. Overby*, 744 A.2d 797 (Pa.Super.2000). However, where a trial court receives an untimely filed Concise Statement and addresses the issues presented therein, there is no waiver. *Commonwealth v. Ortiz*, 745 A.2d 662, 663 n. 3 (Pa.Super.2000). No waiver is found in such instances because the purpose behind Pa.R.A.P.1925 is served in that appellate review is not hindered. *Id.* Nevertheless, "a Concise Statement which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent to no Concise Statement at all." *Commonwealth v. Dowling*, 778 A.2d 683, 686–687 (Pa.Super.2001). Even if the trial court correctly guesses the issues Appellant raises on appeal and writes an opinion pursuant to that supposition, the issue is still waived. *Commonwealth v. Lemon*, 2002 PA Super 234, at *12, 804 A.2d 34 (2002).

■ ¶ 8 The record reflects that the trial court first ordered that the Concise Statement be filed by March 6, 2001 and then extended the deadline to March 21, 2001. Appellant filed two Concise Statements, one on April 16, 2001, one on April 17, 2001.[1] Appellant's Concise Statements were thus untimely filed, and the issues presented therein were waived. *Overby.*

■ ¶ 9 Despite the untimely nature of the Concise Statements, the trial court

---

1. We note that whether it was proper for Appellant to file two Concise Statements is not at issue in this appeal. Neither the Commonwealth nor the trial court raises this issue. Further, because all issues raised in Appellant's first Concise Statement, filed on April 16, 2001, are waived, there is no need to discuss this issue. However, we caution counsel against engaging in such a practice as it fails to constitute zealous advocacy and risks waiver of issues.

chose to write an opinion. The trial court wrote an opinion only as to the issues presented in Appellant's April 17th Concise Statement. In his April 17th Concise Statement, Appellant raised the following issue: [2]

a. The suppression court erred in failing to suppress the statements made by [Appellant] to the staff at Danville, and his probation officer, ruling that his statements were voluntary despite the fact that those statements were given in response to question or statements from staff which were designed, in part, to elicit information regarding the homicide despite his desire not to make such statements.

Appellant's Concise Statement, 4/17/01, 1–2.

¶ 10 The trial court found that the issue presented was too vague for it to identify what issues Appellant wished to raise on appeal. Specifically, the trial court stated:

[i]n the course of the investigation, [Appellant] made numerous statements and confession[s] to various court personnel. Because [Appellant] has failed to specify the exact dates of the statements at issue here, this Court has done its best

to identify and address the statements it feels [Appellant] is referring to.
Trial Court Opinion, 7/13/01, at 2.

■ ¶ 11 In Appellant's case, the trial court addressed Appellant's untimely Concise Statement by writing an opinion on the issue presented therein. Since the Concise Statement did not sufficiently identify the issue for the trial court, the trial court was forced to guess as to the issues Appellant wished to raise on appeal. Even if the trial court correctly guessed the issues Appellant brings before this Court, the vagueness of Appellant's Concise Statement renders all issues raised therein waived. *Lemon.* Therefore, Appellant has not preserved any issues for review.

■ ¶ 12 Appellant's counsel attempts to revive any waived issues regarding the admissibility of Appellant's inculpatory statements by alleging his own ineffectiveness for failing to properly preserve the issues for review. This Court has held that where counsel fails to raise an issue in the Concise Statement, counsel may allege his own ineffectiveness for failing to preserve the issue for appellate review. *Commonwealth v. Mackert*, 781 A.2d 178, 183 (Pa.Super.2001). Therefore, we may review the admissibility of Appellant's inculpatory statements in the context of whether Appellant's counsel was ineffective for failing to preserve the issue for appeal.[3]

---

**2.** Appellant also raised the following issue in his Concise Statement:

Trial counsel rendered ineffective assistance in failing to file a post-sentencing motion requesting a new trial where the verdict was against the weight of the evidence. The only evidence that [Appellant] was involved in the homicide came from his own statements and those statements were contradicted by other statements made by [Appellant] at approximately the same time. Furthermore, [Appellant] presented credible alibi testimony that he was home at the time of the homicide.

Issues not presented in the Statement of Questions Involved portion of a brief will not

be considered. Pa.R.A.P. 2116(a). Also, an issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived. *Commonwealth v. Rodgers*, 413 Pa.Super. 498, 605 A.2d 1228, 1239 (1992).

Appellant neither presents this issue in his Statement of Questions Presented nor includes an argument of this issue within the discussion of any presented issue. Thus, this issue is abandoned and waived.

**3.** We observe that Appellant's final question presented alleges ineffective assistance of trial counsel for admitting evidence of Appellant's prior convictions. This issue was not present-

■ ¶ 13 Our standard of review for a claim of ineffective assistance of counsel is well settled.

> In order for Appellant to prevail on [a] claim of ineffective assistance of counsel, he must show: (1) the underlying claim is of arguable merit; (2) the particular course of conduct of counsel did not have some reasonable basis designed to effectuate his interests; and (3) counsel's ineffectiveness prejudiced him.

*Commonwealth v. Howard*, 732 A.2d 1213, 1214 (Pa.Super.1999). Where counsel alleges his own ineffectiveness, we must remand for appointment of new counsel except: (1) where it is clear from the record that counsel was ineffective; or (2) where it is clear from the record that the ineffectiveness claim is meritless. *Commonwealth v. Green*, 551 Pa. 88, 709 A.2d 382, 384 (Pa.1998). Also, counsel cannot be found ineffective for failing to raise a meritless claim. *Commonwealth v. Goodwine*, 692 A.2d 233, 238 (Pa.Super.1997).

¶ 14 Appellant made several inculpatory statements to the counselors at Danville, which were used against him at his trial. First, Appellant informed Ms. Donna Heath during an individual counseling session that Appellant was teaching another individual how to commit an armed robbery when the other individual shot Reverend Brunsvold. N.T., 9/26–29, at 49–50. Second, while Appellant was being physically restrained following a violent outburst, Mr. William Groover confronted Appellant with his involvement in Reverend Brunsvold's murder, and Appellant stated to Mr. Groover that "it wasn't like that when we killed the preacher." *Id.* at 71. Third, Mr. Kenneth Quigley asked Appellant if he was involved in Reverend Brunsvold's murder and what Appellant's moth-

er would think of his involvement, to which Appellant shook his head and said, "I don't know." *Id.* at 348–349.

¶ 15 The thrust of Appellant's argument is that the counselors at the Danville facility have the status of law enforcement personnel for the purpose of custodial interrogation and, therefore, their questioning of Appellant constitutes interrogation. Appellant asserts that his statements made in response to that questioning must be suppressed as Appellant had not been given his warnings under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

¶ 16 *Miranda* prohibits the use of inculpatory statements obtained in violation of the Fifth Amendment to the United States Constitution. The United States Supreme Court stated in *Miranda* that:

> the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards [the *Miranda* warnings] effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

*Commonwealth v. McGrath*, 504 Pa. 103, 470 A.2d 487, 491–492 (1983) (plurality opinion) (citation omitted). As is generally known, the *Miranda* warnings advise a criminal defendant, among other things, of his right to remain silent and his right to an attorney. *Commonwealth v. Mannion*, 725 A.2d 196, 199 n. 3 (Pa.Super.1999) (*en banc* ).

ed in his April 17th Concise Statement nor does appellate counsel assert his own ineffectiveness for failing to include the issue in the

Concise Statement. Therefore, this issue is waived. *Commonwealth v. Lord,* 553 Pa. 415, 719 A.2d 306, 309 (1998).

¶ 17 The Commonwealth concedes that Appellant was in custody at the time of the challenged statements. Commonwealth's Brief at 8. Therefore, our inquiry will focus on whether Appellant's statements were the products of interrogation. Interrogation is defined as "police conduct 'calculated to, expected to, or likely to evoke admission.'" *Mannion*, 725 A.2d at 200. In order to trigger the safeguards of *Miranda*, there must be both custody and interrogation. *Commonwealth v. Turner*, 772 A.2d 970, 973 (Pa.Super.2001) (*en banc*). Statements not made in response to custodial interrogation are classified as gratuitous and are not subject to suppression for lack of *Miranda* warnings. *Mannion*, 725 A.2d at 200.

¶ 18 Under certain circumstances, individuals who are not law enforcement personnel nevertheless possess the status of law enforcement for purposes of custodial interrogation. In *Commonwealth v. Chacko*, 500 Pa. 571, 459 A.2d 311 (1983), our Supreme Court concluded that a Director of Treatment at the State Correctional Institute at Pittsburgh conducted custodial interrogation. The defendant, an inmate at the institution, was summoned to the office of the Major of the Guard, where the Director of Treatment was also present. *Id.* at 313–314. There, the Director of Treatment asked the defendant if he was involved in a stabbing incident in the institution, to which the defendant replied that he had stabbed the victim. *Id.* at 314. The Court reasoned that:

> The Commonwealth's argument that no *Miranda* warnings were required because the Director was a member of the internal prison staff rather than a police officer is without merit.
>
> The particular office that the official who performs the custodial interrogation represents is inconsequential because *Miranda* was not concerned with the division of responsibility between the various state investigatory agencies but was concerned with official custodial interrogations of an accused and the use of statements obtained from an accused without an attorney in such circumstances to prove the State's case against the accused.
>
> ... Regardless of the Director's normal duties at the institution, it is clear that when he asked the question involved in the presence of the Major he was acting in furtherance of the then-ongoing investigations as to the stabbing of Russel.

*Id.* at 315 n. 3 (citations omitted).

¶ 19 Thus, the Court in *Chacko* concerned itself with the fact that the inquisitor posed the question to the defendant to further the investigation of the crime with which the defendant was subsequently charged. While the Court found that the Director's position within the institution did not matter, the Director's assumption of investigative duties by asking the defendant whether he was involved in the crime constituted custodial interrogation.[4] *Id.* at 315.

¶ 20 Civil investigators may conduct custodial interrogation requiring *Miranda* warnings. In *Commonwealth v. Ramos*, 367 Pa.Super. 84, 532 A.2d 465 (1987), a Children and Youth Services' (CYS) caseworker interviewed the defendant while he was being held on child

---

4. Although the Court determined that a violation of *Miranda* occurred, the Court nevertheless affirmed the judgment of sentence, holding that the proper admission of subsequent statements rendered the admission of the statement obtained in violation of *Miranda* harmless. *Chacko*, 459 A.2d at 316.

molestation charges at a county jail. The caseworker informed the defendant that his investigation was civil, not criminal, in nature. The defendant subsequently confessed to the molestation, which the caseworker reported to the police. This Court held that the suppression of the confession was proper, because the confession was elicited during custodial interrogation without *Miranda* warnings having been given. *Id.* at 468. This Court reasoned that "CYS is not only a treatment agency, but is the investigating arm of the state-wide system of Child Protective Services." *Id.* at 468.

■ ¶ 21 Moreover, while it has been held that a variety of persons have conducted custodial interrogation requiring the protections of *Miranda,* the status of the individual questioning the defendant is but one consideration.[5] "The determination of whether statements were elicited at a custodial interrogation must be made in light of the totality of circumstances involved, and the status of the questioner is only one of the relevant circumstances." *McGrath,* 470 A.2d at 493.

■ ¶ 22 In the instant case, the trial court denied Appellant's motion to suppress the statements made to the Danville counselors. Specifically, the trial court determined that the counselors were not the equivalent of law enforcement so that *Miranda* did not apply.

¶ 23 Our review of the record reflects that Danville counselors render treatment to juvenile offenders and do not conduct investigations. As stated above, Appellant was present at Danville in order to receive treatment to correct his delinquent behavior. The purpose of Danville is to rehabilitate juvenile delinquents and prepare them to reenter society. A juvenile's time at Danville is governed by how much he participates in his own treatment, but all juveniles leave Danville upon turning 21 years old. This treatment is concerned with a juvenile's general criminal lifestyle and thought processes regarding crime generally. The hoped-for result is that the juveniles will develop remorse for their past crimes. Danville counselors do not ask specific questions regarding specific crimes the juvenile may have committed; all discussion of a juvenile's criminal life is conducted in general terms. N.T., 9/26–29/00, at 43 and 48.

¶ 24 Appellant was not subjected to custodial interrogation at the time he made the three contested statements. First, the counselors at Danville are not the equivalent of law enforcement for *Miranda* purposes. They are not charged with investigating crimes and reporting their findings

5. The following cases held that government officials, who were neither law enforcement officers nor police officials, conducted custodial interrogation requiring the application of *Miranda:*

*Mathis v. United States,* 391 U.S. 1, 88 S.Ct. 1503, 20 L.Ed.2d 381 (1968) (*Miranda* applicable where Internal Revenue Service agents questioned suspect during custodial interrogation); *United States v. De La Cruz,* 420 F.2d 1093 (7th Cir.1970) (*Miranda* applicable where airport customs officer questioned suspect during custodial interrogation); *United States v. Planche,* 525 F.2d 899 (5th Cir.1976) (*Miranda* applicable where liquor control agents question suspect during custodial interrogation); *Commonwealth v. Simala,* 434 Pa. 219, 252 A.2d 575 (1969) (*Miranda* applicable where city mayor questioned suspect during custodial interrogation); *Commonwealth v. Bordner,* 432 Pa. 405, 247 A.2d 612 (1968) (*Miranda* applicable where suspect's father questioned suspect, in presence and with the acquiescence of police officers, during custodial interrogation); *United States v. Miller,* 261 F.Supp. 442 (D.Del.1966) (*Miranda* applicable where military officers questioned suspect during custodial interrogation).

*McGrath,* 470 A.2d at 492.

to the authorities. Unlike the CYS case-worker in *Ramos* and the Director of Treatment in *Chacko*, the Danville counselors were not charged with investigative duties nor did they probe Appellant's criminal life in furtherance of an ongoing investigation. The counselors were attempting to provide treatment to Appellant. By cooperating with the treatment, Appellant had the possible good fortune of ending his confinement earlier than his 21st birthday. Cooperating with the counselors required Appellant to discuss in general terms his criminal lifestyle. Cooperating did not require him to admit his guilt in other crimes.

¶ 25 Additionally, the record reflects that Appellant was made aware that his statements disclosing his involvement in the killing of Reverend Brunsvold would be reported to law enforcement. Ms. Heath testified that all juveniles are informed within their first few days at Danville that specific information regarding unsolved crimes would be reported to law enforcement. N.T., 9/26–29/00, at 60. Appellant first revealed his involvement in Reverend Brunsvold's murder during a family counseling session conducted by Mr. Allen Clark. *Id.* at 24–25 and 28. In response to a question posed by Appellant's mother, Appellant stated that he had witnessed the shooting of Reverend Brunsvold. *Id.* at 27–28. Appellant testified that at the time he made this statement, he was informed that his statement would be reported to law enforcement. *Id.* at 143. This statement, and the subsequent warning that it would be reported, preceded the three statements challenged on this appeal. *Id.* Further, Ms. Heath informed Appellant prior to his statement to her that specific information regarding the unsolved murder of Reverend Brunsvold would be reported to law enforcement. *Id.* at 45–49.

¶ 26 As the Danville counselors are not the equivalent of law enforcement under *Miranda*, Appellant's statements to the counselors were not the products of custodial interrogation. Since Appellant's statements were not made in response to custodial interrogation, they are considered gratuitous. *Mannion*, 725 A.2d at 200. Gratuitous statements do not require the issuance of *Miranda* warnings. *Id.* Further, Appellant knew at the time he made the statements that details of unsolved crimes would be reported to the police. Nevertheless, Appellant chose to reveal such details during the course of his treatment at Danville. Under these circumstances, there is no merit to the issue that these statements should have been suppressed. Therefore, Appellant's counsel was not ineffective by failing to preserve for appeal a challenge to the admissibility of these statements.

¶ 27 Judgment of sentence affirmed.

FORD ELLIOTT, J., concurs in the result.