J-A11022-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: C.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.C.-R., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1994 EDA 2021 |

Appeal from the Order Entered September 1, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000695-2016

| | | |
|---|---|---|
| IN THE INTEREST OF: C.A.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.C.-R., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1995 EDA 2021 |

Appeal from the Decree Entered September 1, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000474-2019

| | | |
|---|---|---|
| IN THE INTEREST OF: T.R., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.C.-R., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 1996 EDA 2021 |

Appeal from the Order Entered September 1, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-DP-0000696-2016

J-A11022-22

IN THE INTEREST OF: T.A.R., A       :    IN THE SUPERIOR COURT OF
MINOR                                :        PENNSYLVANIA
                                       :

APPEAL OF: A.C.-R., FATHER    :
                                       :
                                     :
                                     :
                                     :        No. 1997 EDA 2021

Appeal from the Decree Entered September 1, 2021
In the Court of Common Pleas of Philadelphia County Juvenile Division at
No(s): CP-51-AP-0000473-2019

BEFORE: BOWES, J., STABILE, J., and McLAUGHLIN, J.

MEMORANDUM BY BOWES, J.:          **FILED AUGUST 8, 2022**

A.C.-R. ("Father") appeals from the September 1, 2021 decrees that terminated involuntarily his parental rights to his children: T.R., born in June 2010, and C.R., born in November 2012;[1] as well as the orders entered the same date that changed each child's permanent placement goal to adoption.[2] We affirm.[3]

---

[1] The captions use two different conventions for each child's initials. Within this memorandum, we use only the first and last initial for each child.

[2] The trial court entered separate decrees terminating the rights of the mother of T.R. and C.R. ("Mother"). Mother has filed appeals in this Court as to these two children at 1988 EDA 2021, 1989 EDA 2021, 1990 EDA 2021, and 1991 EDA 2021, as well as several appeals regarding children unrelated to Father.

[3] Since Father's brief has abandoned any argument in support of the appeals from the goal change orders, we affirm those orders without further discussion. *See Commonwealth v. Heggins*, 809 A.2d 908, 912 n.2 (Pa.Super. 2002) (citation omitted) ("[A]n issue identified on appeal but not developed in the appellant's brief is abandoned and, therefore, waived.").

- 2 -

Mother and Father have a long history with the Philadelphia Department of Human Services ("DHS"). Of immediate relevance, in 2016 DHS removed T.R. and C.R. from the care of Father and Mother and adjudicated them dependent after receiving a general protective services ("GPS") report regarding concerns with inadequate hygiene and food, as well as Mother's substance use. In August 2017, T.R. and C.R. were reunified with Father on the condition that Mother not have unsupervised contact with them. However, during a visit to Mother's home in May 2018, DHS found Father, T.R., and C.R. living there. DHS again took custody of T.R. and C.R. and they were re-adjudicated dependent and placed into care.[4] Since 2018, Father's main objectives were visitation, housing, employment, and attending his parenting capacity evaluation ("PCE"). N.T., 7/11/19, at 192. Additionally, he was to complete a drug and alcohol program and submit to random drug testing.

On June 26, 2019, DHS filed petitions to terminate the parental rights of Father as to T.R. and C.R. pursuant to 23 Pa.C.S. § 2311(a)(1), (2), (5), and (8). DHS also sought to change each child's permanency goal to adoption. The trial court held hearings on these petitions on July 11, 2019, January 17, 2020, January 19, 2021, March 15, 2021, and August 10, 2021.[5] With respect

_____

[4] T.R. and C.R. have resided in the same pre-adoptive foster home together since they re-entered care in 2018.

[5] In addition to the goal change and termination hearings for T.R. and C.R., the trial court simultaneously held goal change and termination hearings for older half-siblings A.S. and J.S., as well as a permanency review hearing for

*(Footnote Continued Next Page)*

to Father's petitions, DHS presented the testimony of K.J., foster father to T.R. and C.R.; Joanna Pecora and Samir Ismail,[6] the case managers from the Community Umbrella Agency ("CUA") assigned to the family; Dr. William Russell, who performed Father's PCE in 2017, as well as a 2019 addendum; and Deanna Compton, the visitation coach. Father testified on his own behalf, as did Mother.

After taking the matters under advisement, the trial court issued decrees terminating Father's parental rights as to T.R. and C.R. pursuant to § 2511(a)(1), (2), (5), (8), and (b), as well as separate orders changing each child's permanency goal to adoption. Father filed timely notices of appeal and concise statements pursuant to Pa.R.A.P. 1925(a)(2). The trial court filed a single responsive Rule 1925(a) opinion. This Court consolidated the appeals *sua sponte*. Father presents the following issues for our consideration:

> 1. Whether the trial court erred or abused discretion when terminating Father's rights under 23 Pa.C.S.A. § 2511(a)(2), (5), (8) absent clear and convincing evidence, and changing the

---

older half-sibling, K.W., none of whom are parties to this appeal. Father is not the biological father of A.S, J.S., or K.W. At the hearings, Emily Blumenstein, Esquire, represented T.R. and C.R. as guardian *ad litem* ("GAL") and Michael Graves, Esquire, represented them as legal counsel. While Attorney Graves sought to have his appointment vacated within thirty-one days following the termination of Father's parental rights, see N.T., 9/1/21, at 13-14, the docket does not include an order vacating his appointment and he still appears as legal counsel of record. We note with displeasure that Attorney Graves did not file a brief with this Court on behalf of the children but the Defender Association of Philadelphia did.

[6] The record alternately spells Mr. Ismail's name as "Ishmael." ***See, e.g.***, N.T., 11/5/20; N.T., 8/10/21; N.T., 9/1/21. We use "Ismail" herein.

children's goal to adoption against their best interests contrary to 23 Pa.C.S.A. § 2511(b).

2. Whether the trial court erred or abused discretion by relying on prior knowledge of the case and facts not in evidence to support the involuntary termination of Father's parental rights.

3. Whether the trial court erred or abused discretion by relying on an outdated [PCE] regarding Father, to support the involuntary termination of his parental rights.

4. Whether the trial court erred or abused discretion by relying on an outdated [PCE] regarding Mother, to support the involuntary termination of Father's parental rights.

5. Whether the trial court erred or abused discretion by failing to ensure that [C.R.] was afforded his right to counsel as his counsel failed to sufficiently inquire about the child's desire to maintain any ongoing legal relationship with Father or ensure that the child understood the termination of Father's parental role.

Father's brief at 5.[7]

We begin with our standard of review for matters involving involuntary termination of parental rights:

The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse

_____

[7] Father has waived his fourth and fifth issues by failing to develop any argument in support thereof within his brief. *See Heggins*, *supra*. With respect to C.R.'s legal representation, we observe that, insofar as we may review this issue *sua sponte*, the trial court complied with the requirements of *In re Adoption of K.M.G.*, 240 A.3d 1218 (Pa. 2020), by appointing separate legal counsel. *Id*. at 1235 (holding "appellate courts should engage in *sua sponte* review to determine if orphans' courts have appointed counsel to represent the legal interests of children in contested termination proceedings, in compliance with [23 Pa.C.S. §] 2313(a)").

of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized [the appellate court's] deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (cleaned up). "The trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G. & J.G.*, 855 A.2d 68, 73-74 (Pa.Super. 2004) (citation omitted). "[I]f competent evidence supports the trial court's findings, we will affirm even if the record could also support the opposite result." *In re Adoption of T.B.B.*, 835 A.2d 387, 394 (Pa.Super. 2003) (citation omitted).

Termination of parental rights is governed by § 2511 of the Adoption Act and requires a bifurcated analysis of the grounds for termination followed by the needs and welfare of the child.

Our case law has made clear that under [§] 2511, the court must engage in a bifurcated process prior to terminating parental rights. Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [§] 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [§] 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa.Super. 2007) (citations omitted).

Father argues that DHS failed to establish by clear and convincing evidence the statutory grounds for termination of his parental rights pursuant to 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b).  Father's brief at 10-16. We have defined clear and convincing evidence as that which is so "clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." ***In re C.S.***, 761 A.2d 1197, 1201 (Pa.Super. 2000) (*en banc*) (cleaned up). Termination is proper when the moving party proves grounds for termination under any subsection of § 2511(a), as well as § 2511(b). ***T.B.B.***, ***supra*** at 395.  To affirm, we need only agree with the trial court as to any one subsection of § 2511(a), as well as § 2511(b). ***See In re B.L.W.***, 843 A.2d 380, 384 (Pa.Super. 2004) (*en banc*).

Here, we focus our analysis on § 2511(a)(1) and (b), which provide as follows:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> > (1) The parent by conduct continuing for a period of at least six months immediately preceding the filing of the petition either has evidenced a settled purpose of relinquishing parental claim to a child or has refused or failed to perform parental duties.
> >
> > . . . .
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of

- 7 -

environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

Our Supreme Court set forth the proper inquiry under § 2511(a)(1) as follows:

Once the evidence establishes a failure to perform parental duties or a settled purpose of relinquishing parental rights, the court must engage in three lines of inquiry: (1) the parent's explanation for his or her conduct; (2) the post-abandonment contact between parent and child; and (3) consideration of the effect of termination of parental rights on the child pursuant to Section 2511(b).

*In re Adoption of Charles E.D.M.*, 708 A.2d 88, 92 (Pa. 1998) (citation omitted). As it relates to timing, this Court further explained,

the trial court must consider the whole history of a given case and not mechanically apply the six-month statutory provision. The court must examine the individual circumstances of each case and consider all explanations offered by the parent facing termination of his or her parental rights, to determine if the evidence, in light of the totality of the circumstances, clearly warrants the involuntary termination.

*In re B., N.M.*, 856 A.2d 847, 855 (Pa.Super. 2004) (citations omitted). Critically, though, the court is prohibited from considering any efforts made by a parent to remedy conditions **after** the filing of the termination petition. 23 Pa.C.S. § 2511(b).

The trial court found that Father "had not meaningfully engaged in [his] affirmative duties as [a] parent" based on his failure to maintain appropriate

- 8 -

housing or complete a drug and alcohol counseling program in an appropriate time frame. Trial Court Opinion, 1/18/22, at 6-7. Father disagrees, arguing that for almost a year before T.R. and C.R. were removed from his care, Father provided clothing, food, and a home to the children, as well as helping Mother rent a larger house to accommodate T.R., C.R., and Mother's other children for any future reunification. Father's brief at 11-12. According to Father, these actions evidenced his "affirmative duty to love, protect and support" his children, and weighed against a finding of abandonment. *Id*. at 12.

Although Father focuses on the period before T.R. and C.R. were removed from his care, the relevant six-month period was the six months preceding the filing of the petition to terminate Father's parental rights, *i.e.*, from December 26, 2018 to June 26, 2019. During that period, Ms. Pecora visited the home of Father and Mother approximately twelve times. She testified that sometimes the home was acceptable and sometimes it was not.[8] Of specific concern to Ms. Pecora were the following: insufficient space for five children in two bedrooms when Mother was also pregnant, cigarette butts and ash on the floor, bugs on the walls, trash and food left around, a bad smell in at least one room, a full litter box, and animal urine and feces on the floor. N.T., 7/11/19, at 117-20, 179-80. Father's reliance on remediation of these conditions after the petitions were filed is of no moment given

---

[8] While Father asserts that Ms. Pecora only found the house unacceptable on four or five occasions, *see* Father's brief at 14-15, she never provided such a number. Rather, the testimony cited by Father referred to how many times Ms. Pecora observed the puppy. N.T., 7/11/19, at 219.

§ 2511(b)'s prohibition against considering remedies begun after the filing of a petition in analyzing § 2511(a)(1).

As to Father's failure to complete a drug and alcohol program, Father alleges that he did not need treatment. *See* Father's brief at 14. However, the drug and alcohol program and random drug tests were required based upon Father smelling of alcohol both when T.R. and C.R. were removed from Father's home and at their adjudicatory hearing. N.T., 7/11/19, at 192-94. Despite receiving transportation passes to attend the court-ordered drug screens, Father was non-compliant as of the July 11, 2019 hearing. *Id*. at 144-45, 148. Additionally, Father had not completed intensive outpatient treatment as recommended by the clinical evaluation unit ("CEU") in 2018. *Id*. at 145-46.

As of the July 11, 2019 hearing, Father attended all his supervised visits during that period. N.T., 7/11/19, at 149. However, Father had not asked to attend either child's medical, dental, or vision appointments and had not attended any school appointments. *Id*. at 151-52. Additionally, Father had not inquired about T.R.'s therapy sessions. *Id*. at 152. Ms. Pecora expressed the following concerns about the children being reunified with Father at that hearing: housing, upkeep of medical appointments, and Father's work schedule and being able to ensure the children attend medical and therapy appointments, as well as school. *Id*. at 154.

Father assails the trial court's reliance on a stale PCE from 2017 and avers the court ignored Dr. Russell's testimony about the 2019 PCE

addendum. *See* Father's brief at 19. However, Dr. Russell testified as to both the 2017 PCE and the 2019 PCE addendum, in which he recommended that Father follow all CEU recommendations and court-ordered drug screens. N.T., 1/17/20, at 34. With respect to the 2017 PCE, even if it was stale, Dr. Russell testified that as of the 2017 PCE, Father was compliant with his then-current objectives and had independent housing and employment. *Id*. at 12. When he conducted the addendum in the summer of 2019, however, Dr. Russell determined that the issue with Father's parenting capacity centered on his inability to maintain a separate life from Mother or to put the children's needs and safety first. *Id*. at 13. In the 2019 addendum, Dr. Russell opined that Father was unable to provide safety to his children and that he should obtain and maintain housing independent from Mother and comply with drug screens. *Id*. at 14-15, 21. As of the January 17, 2020 hearing, Dr. Russell expressed those same concerns. *Id*. at 15-16.

This Court has long recognized that a parent is required to make diligent efforts towards the reasonably prompt assumption of full parental responsibilities. *In re A.L.D.* 797 A.2d 326, 337 (Pa.Super. 2002). In this vein, "[a] parent's vow to cooperate, after a long period of uncooperativeness regarding the necessity or availability of services, may properly be rejected as untimely or disingenuous." *Id*. at 340 (citation omitted). As it relates to § 2511(a)(1), "[a] parent is required to exert a sincere and genuine effort to maintain a parent-child relationship; the parent must use all available resources to preserve the parental relationship and must exercise 'reasonable

firmness' in resisting obstacles placed in the path of maintaining the parent-child relationship." *In re C.M.S.*, 832 A.2d 457, 462 (Pa.Super. 2003) (citation omitted). "This court has repeatedly recognized that parental rights are not preserved by waiting for a more suitable or convenient time to perform one's parental responsibilities while others provide the child with his or her immediate physical and emotional needs." *Id*. (cleaned up).

Instantly, Father failed to assume parental duties for T.R. and C.R. for at least six months prior to the filing of the termination petition. Aside from visitation, he failed to comply with his objectives. Accordingly, the trial court did not err in terminating his parental rights as to T.R. and C.R. pursuant to § 2511(a)(1).

Finally, we consider whether the trial court committed an error of law or abuse of discretion pursuant to § 2511(b). As explained above, § 2511(b) focuses on the needs and welfare of the child, which includes an analysis of any emotional bond that the children may have with Father and the effect of severing that bond. *L.M.*, *supra* at 511. The key questions when conducting this analysis are whether the bond is necessary and beneficial and whether severance of the bond will cause the child extreme emotional consequences. *In re Adoption of J.N.M.*, 177 A.3d 937, 944 (Pa.Super. 2018) (quoting *In re E.M.*, 620 A.2d 481, 484–85 (Pa. 1993)). It is important to recognize that the existence of a bond, while significant, is only one of many factors courts should consider when addressing § 2511(b). *In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa.Super. 2015) (quoting *In re N.A.M.*, 33

A.3d 95, 103 (Pa.Super. 2011)). Other factors include "the safety needs of the child, and . . . the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent." *Id*.

Father argues that T.R. and C.R. "repeatedly expressed their desire to go back to mom and dad" but the foster parent was "waging some sort of psychological warfare to convince the [c]hildren to stay with him." Father's brief at 16-17. For example, Father asserted that the foster parent "complained about trivial things[,]" like C.R. "peeing in the shower" and "pissing in inappropriate places in the house hinting that the boy took that habit from" Father. *Id*. at 17. Father also assailed the "alienating tactic" of rescheduling many of the visits T.R. and C.R. had with Father and Mother. *Id*. According to Father, "[t]hese maneuvers . . . served to wear down the [c]hildren psychologically into submission to the idea of adoption." *Id*. at 18.

As a general matter, Pennsylvania does not require the orphans' court to enlist a formal bonding evaluation or base its needs and welfare analysis upon expert testimony. *In re Z.P.*, 994 A.2d 1108, 1121 (Pa.Super. 2011). "Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." *In re T.S.M.*, *supra*, at 268. In weighing the bond considerations pursuant to § 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id*. at 269. "Children are young for a scant number of years, and we have an obligation to see to their healthy

development quickly.   When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id*.  A court cannot "toll the well-being and permanency" of a child indefinitely in the hope that a parent "will summon the ability to handle the responsibilities of parenting." *In re C.L.G.*, 956 A.2d 999, 1007 (Pa.Super. 2008) (*en banc*) (citation omitted).

In relation to § 2511(b), the trial court cited Ms. Pecora's belief that termination was in the best interests of the children and that termination would not cause irreparable harm.  Trial Court Opinion, 1/18/22, at 7.  Based on its review of the record, the trial court found a bond existed between the children and K.J.  *Id*.  This assessment is supported by the certified record.  When the children reentered care in 2018, T.R. had fourteen cavities and C.R. had four.  N.T., 7/11/19, at 143.  Father claims he was aware of dental issues when the children returned to his care in 2017 but he was unable to take the children to the dentist while they were in his care.  N.T., 8/10/21, at 79-82.  C.R. urinates in the shower, in trash cans, in bed, and on the floor, explaining that he had seen Father do the same.  N.T., 7/11/19, at 64.[9]  Since being in K.J.'s care, T.R and C.R. have improved their personal hygiene and excelled in school.  *Id*. at 64, 71.  However, T.R. and C.R. act out and revert to poor hygiene habits surrounding parental visits.  *Id*. at 61-64.

---

[9] While Father argues that this testimony is of little concern because C.R. would have been around three years old at the time, the record bears out that C.R. was at least five years old.

Father has not attended school meetings or medical appointments. *Id*. at 69-70. Instead, K.J. takes care of the boys' physical, emotional, and educational needs. *Id*. at 85-86. Ms. Pecora testified that T.R. and C.R. have a healthy bond with K.J. and "would be better off . . . educationally, housing-wise, stability-wise and care-wise" with him. *Id*. at 172, 174. She noted that T.R. and C.R. look to K.J. for their daily needs, not Father. *Id*. at 207. Ms. Pecora further testified that termination would not result in irreparable harm to T.R. or C.R. N.T., 3/15/21, at 14, 27-28. Moreover, contrary to Father's arguments, the court considered K.J.'s rescheduling of some visitations because of other planned events or because the children allegedly did not want to attend the visits. Rather than ignoring this evidence, the court admonished, "[h]e shouldn't have done that." N.T., 7/11/19, at 81. Nevertheless, insofar as the periodic inconvenience to Father associated with the rescheduled visits did not amount to alienation or coercion, Father's contention is unpersuasive.

The certified record demonstrates that T.R. and C.R. are best served by terminating the parental rights of Father in anticipation of adoption by K.J. Stated plainly, the children have thrived since entering care and the resource parent has provided a stable, loving environment that provides structure and satisfies each child's developmental, physical, and emotional needs and welfare. Moreover, the record bears out that each child has formed a healthy

bond with their resource parent.  As such, the record supports the assessment of the trial court that termination is in the best interests of T.R. and C.R.

Accordingly, we affirm the decrees terminating Father's parental rights and the orders changing the permanency goals for T.R. and C.R. to adoption.

Decrees affirmed.  Orders affirmed.

Judge McLaughlin joins this Memorandum.

Judge Stabile files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/8/2022