**In the Interest of J.Y. (Born: 11/05/95); B.P. (Born: 11/01/97), minor children.**

**Appeal of R.H.P. (at No. 1363).**

**In the Interest of J.Y. Born: 11/05/95; B.P. Born: 11/01/97.**

**Appeal of C.L.Y., the natural mother; R.H.P, the natural father. (at No. 1777).**

Superior Court of Pennsylvania.

Submitted March 29, 2000.
Filed June 7, 2000.

David A. Colecchia, Greensburg, for appellants.

Mary Ann Grec, Greensburg, for Westmoreland County CYS, participating party.

Before DEL SOLE, ORIE MELVIN and BECK, JJ.

BECK. J.:

¶1 This is an appeal from a trial court order implementing a change of goal from reunification to adoption. The matter prompts us to decide, *inter alia,* two primary issues 1) whether and to what extent the court may consider a parent's refusal to participate in a mental health program and other remedial services in determining a change of goal; and 2) whether it is appropriate to apply evidence suppression principles to dependency proceedings. After careful consideration of all of appellants' claims, we affirm.

¶2 Mother and Father, appellants herein, are the biological parents of J.Y., age four, and B.P., age two. The children were declared dependent shortly after B.P.'s birth in late 1997 and have been in the custody of Westmoreland County Children's Bureau ("the Bureau") since that time. Currently, the siblings live together in a foster home. Appellants filed separate appeals from the trial court's ruling. However, because they raise nearly identical issues, we have consolidated the matters for disposition on appeal.

¶3 The Bureau's first contact with the family in the fall of 1997 was prompted by a complaint of poor supervision and housing conditions, as well as domestic violence. Ultimately, J.Y. and B.P. were adjudicated dependent and placed in foster care. Mother and Father were referred to various services, including parenting and life skills, substance abuse evaluation and treatment, mental health evaluation and treatment, job training and GED courses.

¶4 Six months later, at a permanency review hearing, the trial court determined that appellants had made little progress. Mother had been voluntarily and involuntarily subjected to in-patient mental health treatment, followed by incarceration. Prior to her imprisonment, she did not complete a parenting course, nor had she obtained her GED or participated in treatment for substance abuse. Father had completed the parenting course, but had not taken the test. Further, he refused hospitalization that had been recommended for mental health treatment. The court ruled that custody was to remain with the Bureau while services to the parents continued. The goal remained reunification of the family.

¶5 At a second review hearing held six months later, the court once more determined that the Bureau should retain custody of the children and that services to the parents should continue. The court's decision was based on the following facts. Father, while initially enrolled in a parenting program, was unsuccessfully discharged from a drug and alcohol program, was not participating in a mental health program and had not secured suitable housing. Further, by the time the second hearing took place, Father was in prison. Mother, while deemed no longer in need of drug and alcohol treatment, was unemployed, had no income, had not obtained suitable housing[1] and was "inconsistent in her mental health treatment and also in her attendance at GED class." Trial Court Opinion, 7/14/99, at 4.

¶6 The court ordered that upon release from prison, Father was to participate in a variety of services, including a parenting program, mental health counseling, drug and alcohol treatment and a GED program. He also was to obtain employment and suitable housing. Mother too, was to obtain employment and to continue participation in similar programs, *i.e.,* parenting, budgeting, mental health and GED classes.

¶7 Approximately seven months later, the court conducted a third permanency review hearing. At the hearing, neither Mother nor Father testified. After testimony by Bureau personnel, the Court ruled that Mother and Father made "mini-

---

1. At the time, Mother was living with her own mother, the children's maternal grandmother. Bureau investigations revealed that grandmother was a perpetrator of sexual abuse.

mal progress . . . toward alleviating the circumstances which necessitated placement." *Id.* at 5. Specifically, the court found that although Mother was "borderline successful" in completing her parenting program, she had failed to comply with all other court ordered programs/services. In addition, she was facing criminal charges of statutory sexual assault and involuntary deviate sexual intercourse in connection with a relationship she had with a thirteen-year-old girl. Father was still incarcerated and so had not satisfied any of the requirements imposed by the court at the previous hearing.[2] In addition, new charges had been filed against him and he was awaiting trial on those charges.

¶ 8 J.Y and B.P., on the other hand, were thriving in foster care. They were living together and, according to the court's assessment of the evidence, doing "exceedingly well" and bonding with their foster parents. The court ruled that reunification was no longer an appropriate goal in the case and changed the goal to adoption. This timely appeal followed.

> Our standard of review in a petition to change the goal of a family service plan is the same as in a dependency appeal. We must accept the facts found by the trial court unless the facts are not supported by the record. Although, as a reviewing court we are bound by the facts properly found, we are not bound by the trial court's inferences, deductions and conclusions made from those facts. Based on properly supported facts, we review to determine if the trial court abused its discretion.

*In the Interest of M.B.*, 449 Pa.Super. 507, 674 A.2d 702, 704 (1996) (citations omitted), *appeal denied*, 547 Pa. 717, 688 A.2d 172 (1997).

**2.** The court found that Father also failed to participate in prison programs designed to enhance parenting skills and treat substance abuse.

**3.** We observe that *T.R.* is not precedential. Only three justices joined in the rationale.

## MENTAL HEALTH PROGRAM

¶ 9 Appellants' first claim concerns the trial court's requirement that they participate in a mental health program and attend GED classes. Both Mother and Father argue that such a requirement is improper as it constitutes an invasion of their privacy. They argue that the court cannot impose such orders and so erred in relying on their non-compliance to support the change of goal.

¶ 10 As authority for their claim, appellants direct our attention to *In the Matter of T.R., J.M., C.R. and C.R.*, 557 Pa. 99, 731 A.2d 1276 (1999), wherein our supreme court concluded that a mother's state constitutional right to privacy precluded the trial court from compelling her to participate in a psychological evaluation, the results of which would be disclosed to the interested parties.

¶ 11 In *T.R.* the mother was ordered by the trial court to undergo a psychological evaluation to determine if she was capable of caring for her children. The trial court ruled that the results of the examination would be "release[d] . . . to the parties in order to effect the proper placement of the child and to keep the families together." *Id.* at 1278. This court affirmed, but our supreme court reversed.[3] It concluded that the mother's state constitutional privacy interest in her psychiatric records was paramount to the state's interest, particularly because there was "an abundance of information in the case about whether the children [were] . . . being cared for properly and whether the mother was a fit parent." *Id.* at 1281. Recognizing that the mother's exercise of her rights may work to her detriment, the court observed:

> The real issue in the case, then, is not so much whether the children should be

Two others dissented and a third concurred in the result. Nonetheless, we will consider the *T.R.* court's rationale, as requested by appellant, to determine if it applies in this case. By doing so, we are not making the conclusion or rationale of T.R. precedential.

removed, as whether the mother should be protected from her own assertion of a constitutional right because the assertion of that right may impede the efforts of the courts to return the children to her care.... The mother, alas, may be her own worst enemy and her shortcomings as a parent may result in the permanent removal of her children; nonetheless, the mother remains a free person, and her power to assert her constitutional right to privacy is not diminished merely because the representatives of the state think it is ill advised.

*Id.*

¶ 12 It is clear that the *T.R.* court was concerned about privacy considerations, the compulsory nature of the court's order for a psychiatric evaluation, and particularly, the release of the results. The court indeed held that the order was improper, but it did not hold that the privacy interests at issue were absolute. In *T.R.*, the state interest in mandating the evaluation was insufficient to overcome the mother's constitutional privacy rights. *Id.* The court pointed out that removal of the children was indicated from the record evidence and therefore the state's need for psychiatric evaluation was not crucial.

■ ¶ 13 Even if we were to accept appellants' argument that under *T.R.* the Bureau has not made an adequate showing that a mental health program was essential and therefore their privacy interests should not be overridden, we still would find that *T.R.* does not lend support to their argument. We conclude that *T.R.* stands for the proposition that the court may not, under certain circumstances, invade an individual's privacy rights by ordering a psychological evaluation and revealing its results; however, the court may take into consideration a parent's refusal to follow its treatment recommendation.

■ ¶ 14 The *T.R.* court recognized that in exercising his or her privacy rights, a parent may lose custody of a child; nonetheless, a parent's right to "protect her beliefs and thoughts from intrusion by others" could not be overcome by an order of the court. *Id.* at 107, 731 A.2d at 1280. It appears that in this case, Mother and Father exercised their right to protect their beliefs and thoughts by refusing to participate in a mental health program. This *T.R.* explicitly condones. However, nothing in *T.R.* prevents the trial court from taking appellants' refusal into account when determining whether to change the goal for J.Y. and B.P. Our reading of *T.R.* leads us to conclude that the rationale of that case does not contradict, but instead lends credence to, the trial court's conclusions regarding appellants' refusal to cooperate with mental health personnel.[4]

¶ 15 In addition we point out that the trial court's findings of fact do not explicitly refer to appellants' failure to participate in a mental health program as a basis for the change of goal. Instead, the court noted appellants' failure to attend GED classes and participate in drug and alcohol treatment, as well as the criminal charges facing both of them, as the basis for its change of goal.

GED PROGRAM

■ ¶ 16 Appellants next attempt to utilize *T.R.* as authority for the proposition that they cannot be required to attend GED classes. This strategy fails as *T.R.* does not address GED requirements, but concerns a parent's right, on privacy grounds, to refuse to submit to a psychological evaluation, the results of which will be divulged to interested parties. Appellants argue that *T.R.* should apply in the GED context because their privacy rights extend to refusing to seek a high school equivalency diploma. We do not agree. The pursuit of a GED does not involve

---

**4.** In his concurring opinion in *T.R.*, Justice Nigro observed that while no parent can be forced to submit to a psychological evaluation, a parent's refusal to submit to one permits the court to draw a "negative inference ... when determining the appropriate placement of the child." *Id.* at 110, 731 A.2d at 1282 (Nigro, J., concurring).

privacy concerns. It is a strategy used to enable parents to improve their chances of providing a better life for themselves and their children. We are persuaded by the trial court's assessment that obtaining such a degree typically provides broader and better employment opportunities, something from which both Mother and Father would benefit. We see no similarity between concerns for privacy in psychological testing, which may reveal personal information, and attendance at GED classes. Therefore, we reject appellants' claim.

¶ 17 In sum we find that the trial court did not err when it requested that appellants participate in mental health programs and attend GED classes. We agree with appellants that no service recommended by the court is mandatory for parents. However, in making its ruling on the status of the children, the court is not prohibited from considering a parent's refusal of services. Such a refusal certainly impacts upon the children's best interests, the standard by which a change of goal must be determined. *M.B., supra*, 674 A.2d at 705.

## SUPPRESSION OF EVIDENCE

¶ 18 The next claim concerns only Mother. She argues that the court erred in admitting testimony that included her statements about the criminal charges she was facing at the time of the hearing. A Bureau caseworker testified that Mother admitted that she had a sexual relationship with a thirteen-year-old girl. In an interview with the caseworker, Mother characterized the contact in a positive manner and described it as relations between "two consenting adults receiving comfort from each other." In addition, mother admitted to kissing and fondling the young girl with another adult.

¶ 19 Mother now argues that this testimony was improper because she was not told by the caseworker that her statements would be used against her at the change of goal hearing. She characterizes her interview with the caseworker as "custodial interrogation" and likens the Bureau caseworker to a police agent.

¶ 20 Mother relies on criminal law to support her claim and insists that *Miranda*[5] warnings should be required under the circumstances presented here. In the absence of such warnings, Mother reasons, her statements should have been suppressed. Mother concedes however, that the right against self-incrimination, and so the right to *Miranda* warnings, applies in criminal proceedings and never has been applied to dependency hearings. Still, she argues that it should.

¶ 21 *Commonwealth v. Ramos*, 367 Pa.Super. 84, 532 A.2d 465 (1987), the primary case upon which Mother relies, does not advance her argument. In *Ramos*, the defendant was in prison when he was interviewed by a caseworker investigating his abuse case. Although he had invoked his right to remain silent in the presence of a state trooper, requested the appointment of a lawyer and refused to answer any questions posed by police, he made incriminating statements to the caseworker. Those statements were transmitted by the caseworker to the police and later offered against the appellant in his criminal case. This court held that because the Child Protective Services Law required the caseworker to turn the statement over to police, the caseworker was akin to a police agent and so the statements made by the defendant had to be suppressed in the criminal case.

¶ 22 Unlike in *Ramos*, Mother's statements were not used against her in a criminal proceeding. Instead, they were offered to the dependency court in the context of a change of goal hearing for Mother's minor children. The statutes and rules governing dependency proceedings do not provide for suppression hearings, nor should they. The dependency

5. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

laws focus on the needs and welfare of neglected and abused children. Dependency court decisions are based on the children's best interests. The purpose underlying the proceedings is not punishment of the parents or restriction of their liberty. Rather, the purpose is to determine the best possible plan for the children. We decline Mother's invitation to extend *Miranda* protections to dependency proceedings aimed at determining the proper goals for children in placement.[6] Such an extension is neither mandated under existing law nor appropriate under the circumstances.

## CONSTITUTIONALITY OF 42 Pa.C.S.A. § 6351(9)

¶ 23 Both appellants claim that the statute utilized by the court in this case, 42 Pa.C.S.A. § 6351, is unconstitutional because it violates due process. The trial judge found this issue waived for failure to raise and preserve it before the trial court. The record reflects that appellants first made the claim in their statement of matters complained of on appeal. The law clearly provides that those issues not raised and preserved in the trial court will not be addressed on appeal. *Hill v. Divecchio*, 425 Pa.Super. 355, 625 A.2d 642, 648 (1993). Further, when a party challenges the constitutionality of a statute, he or she is required to notify the State Attorney General Office so that the Attorney General has the opportunity to be heard on the issue. *Id.*; Pa.R.Civ.P. 235; Pa.R.A.P. 521(a). Failure to do so likewise results in waiver of the claim. *Hill, supra.*

¶ 24 Because appellants neither preserved the issue in the trial court, nor complied with the applicable rules, they have waived their constitutional claim. *In re Adoption of Christopher P.*, 480 Pa. 79, 389 A.2d 94 (1978); *Hill, supra.*

## PROPRIETY OF THE TRIAL COURT'S ORDER

¶ 25 Finally, both Mother and Father argue that the trial court erred in concluding that a change of goal was proper under these facts. Appellants claim that the evidence does not support the court's order. We cannot agree. In light of all of the evidence presented by the Bureau, which is set out in detail above, we conclude that the change of goal from reunification to adoption did not constitute an abuse of discretion and so appellants are not entitled to relief.

¶ 26 Order affirmed.

¶ 27 DEL SOLE, J., filed a Concurring Opinion.

DEL SOLE, J., concurring:

¶ 1 I agree with the majority that the Order in this case should be affirmed. However, I do not agree that, under the facts presented by this case, we need to engage in an analysis of whether a trial court may take into consideration a parent's refusal to follow a court-ordered psychological evaluation treatment recommendation.

¶ 2 The trial court stated unequivocally in its Opinion that "[a]n examination of paragraph 5 of this Court's Findings of Fact fails to disclose any reference to the mother not obtaining a mental health evaluation, and as such, did not form the basis of this Court's decision." Trial Court Opinion, 7/14/99, at 10.

¶ 3 Accordingly, because the other factors the trial court relied on in entering its Order were more than sufficient, I concur in the result reached by the majority.

---

6. We caution that our resolution of this issue in no manner implicates the provisions of 42 Pa.C.S.A. § 6337, which provides to a party in a juvenile case "legal representation at all stages of proceedings." In this case, Mother is seeking application of the exclusionary rule in a civil proceeding and our holding is limited to rejecting her request.