J-A29030-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF I.A.I.R. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| APPEAL OF: H.R., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2159 EDA 2018 |

Appeal from the Order Entered June 21, 2018
In the Court of Common Pleas of Montgomery County Orphans' Court at
No(s):  No. 2016-A-0181

BEFORE:   OTT, J., DUBOW, J., and STEVENS, P.J.E. *

MEMORANDUM BY DUBOW, J.:                     **FILED JANUARY 23, 2019**

Appellant, H.R. ("Father"), appeals from the June 21, 2018 Order entered in the Montgomery County Orphans' Court, which involuntarily terminated his parental rights to I.A.I.R. ("Child").  Upon careful review, we affirm.

A detailed recitation of the factual and procedural history is unnecessary to our disposition.  Briefly, Child was born in February of 2016.  On or around March 22, 2016, Montgomery County Office of Children and Youth ("OCY") and the Norristown Police Department ("Police") received a report that Child was born as a result of incest and had not received any pre-natal or post-natal medical care.  OCY and Police went to the home of then-48-year-old Father and his daughter, then-21-year-old N.R. ("Mother"), where Father admitted to Police that he was the biological father to both Mother and Child.  Police subsequently arrested Father and OCY obtained an Order for Emergency

_____
*   Former Justice specially assigned to the Superior Court.

Custody. On April 5, 2016, the trial court adjudicated Child dependent and placed Child in foster care after hearing evidence that Father was incarcerated, charged with Incest,[1] and had admitted to OCY and Police that he was the biological father of both Mother and Child. The trial court also heard evidence that OCY had concerns about Mother's mental health and the safety of Child. Specifically, Mother was unwilling to cooperate with OCY, was unwilling to accept services and baby supplies from OCY, and was unwilling to obtain medical care for Child.

On September 9, 2016, Father entered a guilty plea to Incest, and on April 17, 2018, the court sentenced Father to a term of 5 to 10 years' incarceration.

After Father entered his guilty plea but prior to his sentencing hearing, on November 14, 2016, OCY filed a Petition to Terminate Father's Parental Rights.

The trial court held termination of parental rights hearings on March 1, 2017 and June 21, 2018. Relevant to this appeal, Detective Kathleen Kelly testified that Father admitted to Police that Child was conceived as a result of incest: "Father said he was the baby's father as well as Mother's father." N.T. TPR Hearing, 3/1/17, at 9. Intake social worker Christin Salazar testified that when she was investigating the allegations of incest, Father also told her that

_____

[1] 18 Pa.C.S. § 4302.

he was the biological father of both Mother and Child. ***Id.*** Finally, CYS introduced a certified copy of Father's criminal record without objection.

On June 21, 2018, the trial court granted the Petition and involuntarily terminated Father's parental rights to Child on the basis that Child was conceived as a result of incest pursuant to 23 Pa.C.S. § 2511(a)(7) and that termination would be in Child's best interest pursuant to 23 Pa.C.S. § 2511(b).[2]

Father timely appealed. Both Father and the trial court complied with Pa.R.A.P. 1925.

Father raises the following issues on appeal:

1. Does [Pa.C.S. § 2511(a)(7)] violate 14th Amendment Equal Protection Clause safeguards where the basis for terminating parental rights apply only to men without any exceedingly persuasive justification for the distinction between genders and this distinction is not substantially related to any governmental interest?

2. Did the trial court err in terminating birth father's parental rights where insufficient evidence established a consanguineous relationship between birth father and birth mother where no DNA evidence or testimony from family members established a blood relationship between birth mother and birth father?

Father's Brief at 4 (some capitalization omitted).

In his first issue, Father claims that the trial court erred in terminating Father's parental rights because the statute forming the basis of termination, 23 Pa.C.S. § 2511(a)(7), makes an unconstitutional gender distinction in

---

[2] The trial court also terminated Mother's parental rights.

violation of the 14th Amendment of the United States Constitution as well as Article 1, Section 28 of the Pennsylvania Constitution. Father's Brief at 7-8, 10 (citing U.S. Const. Am. XIV; Pa. Const. Art. 1, Sec. 28).

Pennsylvania law is clear that when a party challenges the constitutionality of any statute, and the Commonwealth is not a party in the matter, the challenging party is required to notify the Attorney General of Pennsylvania so that the Attorney General has the opportunity to be heard. *In re J.Y.*, 754 A.2d 5, 11 (Pa. Super. 2000). *See also* Pa.R.C.P. No. 235; Pa.R.A.P. 521(a). The party is required to file proof of service of such notice. *See* Pa.R.C.P. No. 235; Pa.R.A.P. 521(a) "Failure to do so results in waiver of the claim." *In re A.H*., 763 A.2d 873, 880 (Pa. Super. 2000) (citation omitted).

Instantly, our review of the record reveals that the Commonwealth is not a party in this matter and Father failed to notify the Attorney General of Pennsylvania that he was challenging the constitutionality of Section 2511(a)(7). Accordingly, we are constrained to find that Father has waived this claim and decline to address its merits.[3]

---

[3] We note that 23 Pa.C.S. § 2511(a)(7) states, in pertinent part, that a court may involuntarily terminate parental rights if "[t]he parent is the **father** of a child conceived as a result of a rape or incest." 23 Pa.C.S. § 2511(a)(7) (emphasis added). We acknowledge that the statute does, in fact, make a distinction based on gender. Notably, the criminal statute defining Incest does not make a distinction based on gender and provides: "a person is guilty of incest, a felony of the second degree, if that person knowingly marries or cohabits or has sexual intercourse with an ancestor or descendant, a brother

In his second issue, Father avers that OCY failed to present clear and convincing evidence of a consanguineous relationship between Father and Mother to warrant a termination of parental rights under Section 2511(a)(7). Father argues that OCY failed to introduce any DNA evidence and that all of the evidence regarding the blood relationship between Father and Mother came from Father's own statements. Father argues that "[a]ny person admitting to engaging in a sexual relationship with his or her progeny inherently lacks credibility." Father's Brief at 12. Father's argument is nonsensical and lacks merit.

The standard of review in termination of parental rights cases requires appellate courts "to accept the findings of fact and credibility determinations of the trial court if they are supported by the record." *In re Adoption of S.P.*, 47 A.3d 817, 826 (Pa. 2012). "If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion." *Id.* We may reverse a decision based on an abuse of discretion only upon demonstration of "manifest unreasonableness, partiality, prejudice, bias, or ill-will." *Id.* We may not reverse, however, merely because the record would support a different result. *Id.* at 826-27.

---

or sister of the whole or half blood or an uncle, aunt, nephew or niece of the whole blood." 18 Pa.C.S. § 4302(a). In light of this disparity, it would be beneficial for the legislature to reevaluate the language of 23 Pa.C.S. § 2511(a)(7).

The burden is upon the petitioner to prove by clear and convincing evidence that the "asserted grounds for seeking the termination of parental rights are valid." *In re R.N.J.*, 985 A.2d 273, 276 (Pa. Super. 2009). We have explained that "[t]he standard of clear and convincing evidence is defined as testimony that is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Id.* (citation and quotation marks omitted).

We give great deference to trial courts "that often have first-hand observations of the parties spanning multiple hearings." *In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013). "The trial court is free to believe all, part, or none of the evidence presented, and is likewise free to make all credibility determinations and resolve conflicts in the evidence." *In re M.G.*, 855 A.2d 68, 73-74 (Pa. Super. 2004).

Instantly, the trial court terminated Father's parental rights pursuant to Section 2511(a)(7), which provides that a court may terminate parental rights if the "parent is the father of a child conceived as a result of a rape or incest." 23 Pa.C.S. § 2511(a)(7). While the Adoption Act does not specifically define "incest," the Crimes Code states, in pertinent part, that "a person is guilty of incest . . . if that person knowingly . . . has sexual intercourse with an ancestor or descendant." 18 Pa.C.S. § 4302(a).

The trial court made a finding that Father was the biological father of Mother and the biological Father of Child. *See* Trial Ct. Op., dated 7/24/18,

at 18. The trial court also made an uncontested finding that Father pleaded guilty to the criminal charge of Incest in April 2018. *Id.* Finally, the trial court determined that the certified document containing Father's conviction for the criminal charge of Incest provided the court with clear and convincing evidence regarding Father's conviction for Incest, thereby proving the grounds for Section 2511(a)(7). *Id.* at 24.

Our review of the record supports the trial court's findings. Father fails to cite, and our research fails to reveal, any case law requiring the introduction of DNA evidence to prove an incestuous relationship pursuant to Section 2311(a)(7). The trial court heard evidence from the Police as well as the OCY intake social worker that Father made multiple admissions that he was the biological father of Mother as well as Child. Moreover, the trial court heard evidence that Father pleaded guilty to the crime of Incest, thus admitting in criminal court that he had sexual intercourse with a descendant, and OCY introduced a certified copy of Father's criminal record into the record without objection. Finally, Father failed to present any evidence to indicate that he was not, indeed, the biological father of Mother.

Thus, the certified record supports the trial court's findings of fact and conclusions of law and the trial court did not abuse its discretion in concluding that OCY met its burden of proof with respect to Section 2511(a)(7).

We also agree with the Orphans' Court's determination that OCY met its burden under 23 Pa.C.S. § 2511(b) that terminating Father's parental rights is in the best interest of the Child.

With respect to Section 2511(b), our analysis shifts focus from parental actions in fulfilling parental duties to the effect that terminating the parental bond will have on the child. Section 2511(b) "focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child." *In re: Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

In *In re C.M.S.*, 884 A.2d 1284, 1287 (Pa. Super. 2005), this Court found that "intangibles such as love, comfort, security, and stability are involved in the inquiry into needs and welfare of the child." In addition, the Orphans' Court "must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond." *Id.*

Most significantly, whether a meaningful bond exists is determined, first, by the extent to which a parent provides safety, security, and support for the child's physical and mental needs, on a daily basis. If a meaningful bond is found to exist, the analysis hinges on the extent to which the child will be harmed by the severance of that bond. Thus, the bond-effect analysis necessarily depends on the circumstances of the particular case. *In re K.Z.S.*, 946 A.2d 753, 763 (Pa. Super. 2008). Importantly, in cases where there is

no evidence of meaningful and extensive contact between a parent and a child, it is reasonable to infer that no bond exists. *Id*. at 762-63.

In this case, the evidence showed that Father has been incarcerated since Child was approximately one month old and has not had any contact with Child. The trial court opined, "[i]n this case credible testimony clearly established that there is no significant bond between [Child] and his birth parents." *See* Trial Ct. Op., dated 7/24/18, at 27. The trial court further concluded, "this court finds that [Child] had bonded with his foster parents and their two other children in the family. [Child] is being nurtured there and is thriving in that setting, which is a preadoptive resource. . . . [Child] will not be irreparably harmed by the termination of his birth parents' parental rights." *Id.* at 28. The trial court concluded that termination of Father's parental rights would be in Child's best interests. *Id.* at 28.

The certified record supports the trial court's findings of fact and credibility determinations. We discern no error of law and conclude that the trial court properly exercised its discretion in terminating Father's parental rights.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>1/23/19</u>