J-A22031-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| WILLIAM SELEMBO AND JEANNIE SELEMBO | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| Appellees | : | |
| | : | |
| v. | : | |
| | : | |
| JAMES MARIANI AND ANNE MARIANI | : | |
| | : | |
| Appellants | : | No. 504 WDA 2023 |

Appeal from the Order Entered March 29, 2023
In the Court of Common Pleas of Indiana County
Civil Division at No(s): 10163 CD 2021

BEFORE: BOWES, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED: JANUARY 4, 2024**

Appellants, James Mariani ("Father") and Anne Mariani ("Adoptive Mother") (collectively, "Parents"),[1] appeal from the order entered in the Indiana County Court of Common Pleas, which granted partial physical custody of J.W.M. (born in December of 2006), H.K.M. (born in September of 2008), and C.R.M. (born in April of 2011) ("Children") to Appellees, William Selembo and Jeannie Selembo ("Maternal Grandparents").[2] We affirm.

_____

[1] Biological mother died in July 2014. Adoptive Mother married Father in July 2015, and she adopted the children on May 30, 2018.

[2] Although this appeal involves a custody action, we will use the parties' names in the caption "as they appeared on the record of the trial court at the time the appeal was taken." Pa.R.A.P. 904(b)(1). Notably, "upon application of a party and for cause shown, an appellate court may exercise its discretion to

*(Footnote Continued Next Page)*

In its opinion, the trial court set forth some of the relevant facts and procedural history of this case as follows:

> [Maternal Grandparents] filed a Complaint for Custody on February 4, 2021. In their Complaint, [Maternal Grandparents] seek partial physical custody pursuant to 23 Pa.C.S.A. § 5325(1). On February 9, 2021, the Parties were ordered by the [c]ourt to communicate with each other to attempt to resolve the issues raised in the Complaint, prior to scheduling Mediation. On March 8, 2021, [Maternal Grandparents] filed a Motion for Mediation.
>
> On May 7, 2021, [Parents] filed a Motion to Dismiss, arguing that [Maternal Grandparents] did not have standing to bring a complaint for custody and that any court intervention would infringe upon [Parents'] right to raise the Minor Children. On July 19, 2021, the [c]ourt found that [Maternal Grandparents] had standing in accordance with 23 Pa.C.S.A. § 5325(1) and the Motion to Dismiss was denied. The Parties attended Mediation on July 27, 2021, and no resolution was reached. The action was subsequently scheduled for Trial on February 9, 2022, and February 10, 2022. Trial was continued for exactly one month due to illness.
>
> On February 22, 2022, a Consent Order was entered upon agreement of the Parties. Said Order stayed the proceedings and continued the Trial to provide the Parties an opportunity to work together in good faith to resolve the custody issue. The Order stated that the Parties shall work together to restore the prior familial relationship between [Maternal Grandparents] and the Minor Children. Additionally, neither Party could move for lifting of the stay or rescheduling of trial for ninety (90) days from the date of the Order.

use the initials of the parties in the caption based upon the sensitive nature of the facts included in the case record and the best interest of the child." Pa.R.A.P. 904(b)(2). **See also** Pa.R.A.P. 907(a). The parties have not applied to this Court for the use of initials in the caption. Nevertheless, we will use the children's initials or refer to them collectively as "Children."

On May 24, 2022, [Maternal Grandparents] filed a Motion for Lift of Stay and to Schedule Custody Trial, averring that [Parents] did not engage in good faith to repair the relationship between [Maternal Grandparents] and the Minor Children. A Pre-Trial Conference was scheduled for July 15, 2022. On June 27, 2022, [Maternal Grandparents] filed a Motion for Custody Evaluation, citing that an evaluation would be helpful to the [c]ourt at Trial and that [Parents] were not working in good faith to reach a resolution. On July 15, 2022, the [c]ourt granted [Maternal Grandparents'] Motion for a Child Custody Evaluation, appointing Dr. Carolyn Menta as the evaluator. The Custody Evaluation Report was obtained by the Parties on November 14, 2022 and a Pre-Trial Conference was scheduled for January 13, 2023 and a final Status Conference scheduled for February 16, 2023. Trial was scheduled for March 8, 2023 and March 9, 2023. The Parties were ordered to file their position on the custody factors to be addressed and their Pre-Trial Statements ten (10) days prior to the final Status Conference.

[Maternal Grandparents] are seeking to retain physical custody of the Minor Children, specifically having periods of partial physical custody to ensure stability and continuity in the Minor Children's lives and to provide the Minor Children with community of family. [Parents] oppose [Maternal Grandparents'] position, stating that a [c]ourt Order is not in the best interest of the Minor Children.

(Trial Court Opinion, filed 3/29/23, at 2-3).

The court held a custody trial on March 8-9, 2023. During trial, the court heard testimony from, *inter alia*, each of the Children, Dr. Carolyn Menta, Psy. D., Maternal Grandparents, and Parents. On March 29, 2023, the court granted Parents sole legal custody and primary physical custody of Children. The court awarded Maternal Grandparents partial physical custody of Children for four (4) hours each month, at a date and time to be agreed upon by the parties. If the parties could not agree, then Maternal

Grandparents' periods of custody would be the third Saturday of each month from 1:00 p.m. until 5:00 p.m., beginning in June of 2023. The court also ordered Parents to share Children's extracurricular activities schedule with Maternal Grandparents so that Maternal Grandparents could attend Children's activities if they chose to do so. On April 24, 2023, Parents filed a timely notice of appeal along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i).

Parents raise four issues for our review:

> Did the trial court err in finding that [Maternal Grandparents] had standing under 23 Pa.C.S.A. § 5325(1) in violation of [Parents'] fundamental right to parent their children?
>
> Did the trial court commit an error of law by finding 23 Pa.C.S.A. § 5325(1) constitutional as applied to [P]arents?
>
> Did the trial court abuse its discretion and/or commit an error of law by misapplying evidence and/or testimony to the custody factors or finding factors in favor of [Maternal Grandparents] contrary to the custody factors under 23 Pa.C.S.A. § 5328(a) and (c)(1)?
>
> Did the trial court abuse its discretion and/or commit an error of law by failing to consider whether specific benchmarks should be met in the court-ordered family counseling before visits begin between the children and [Maternal Grandparents] in contradiction to the evidence, testimony, and/or expert report of Dr. Carolyn Menta, Psy.D.?

(Parents' Brief at 7-8).

Our scope and standard of review in custody matters are as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must

- 4 -

accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

With any child custody case, the paramount concern is the best interests of the child. This standard requires a case-by-case assessment of all the factors that may legitimately affect the physical, intellectual, moral and spiritual well-being of the child.

***M.J.M. v. M.L.G.***, 63 A.3d 331, 334 (Pa.Super. 2013).

In their first and second issues, Parents assert that Adoptive Mother is Children's legal mother. Parents argue that childrearing decisions belong to parents and not to the courts. Parents maintain that Maternal Grandparents have not alleged abuse, neglect, or unfitness by Parents. Rather, Maternal Grandparents have only asserted that their visitation with Children did not occur as often as they wanted. Parents emphasize that it was their choice as parents to decide how often Children visit with Maternal Grandparents. Parents acknowledge that 23 Pa.C.S.A. § 5325 grants grandparents standing where a parent is deceased. Nevertheless, Parents claim there is no compelling reason for the statute to treat fit adoptive parents and fit widowed parents differently than fit biological parents, which includes the right to

decide with whom their children associate. Parents insist that Section 5325(1) unlawfully infringes on their fundamental right to parent.

Parents acknowledge that pursuant to 23 Pa.C.S.A. § 5326, after an adoption takes place, grandparents lose all rights to pursue custody, except when the adoption occurs by a stepparent, grandparent, or great-grandparent. Parents argue, however, that once Adoptive Mother adopted Children, Children were akin to her biological children "in the eyes of the law." (Parents' Brief at 18). Parents complain that the exception under Section 5326 "severely limits and infringes upon prospective adoptive parents' rights and obligations as a parent." (*Id.* at 17). Parents insist that the statutory language "is contradictory and makes certain adoptive parents second-class citizens." (*Id.*) Parents complain that simply because Adoptive Mother is considered a "stepparent" she has fewer legal rights than other adoptive parents such as an adoptive aunt or uncle.

Parents admit that the state has a compelling interest in protecting the bonds between children and their grandparents. Nevertheless, Parents maintain that the statute granting grandparents any rights in this situation is not narrowly tailored. Parents insist that "[b]y limiting grandparents' standing only when the adopting parent is a stepparent or grandparent is not narrowly tailored to achieve this interest. If this was the true compelling interest, then grandparents would have standing anytime a grandchild is adopted, but the state legislature has severely limited that." (*Id.* at 19). Parents conclude

that the statutes granting Maternal Grandparents standing in this case are unconstitutional, and this Court must grant relief. We disagree.

Parents' challenge to Maternal Grandparents' standing is a question of law. ***S.G. v. J.M.G.***, 186 A.3d 995, 997 (Pa.Super. 2018), *appeal denied*, 649 P. 645, 197 A.3d 1177 (2018). Therefore, our standard of review is *de novo*, and our scope of review is plenary. ***Id.*** Similarly, "as challenges to the constitutionality of statutes present pure questions of law, our standard of review is *de novo*, and our scope of review is plenary." ***Pennsylvania Environmental Defense Foundation v. Commonwealth***, 640 Pa. 55, 86, 161 A.3d 911, 929 (2017). "As with any constitutional challenge to legislation, the challenger bears the heavy burden of demonstrating that the statute clearly, plainly, and palpably violates the Constitution." ***Id.*** (internal citation and quotation marks omitted).

The Domestic Relations Code grants standing to seek partial physical custody and supervised physical custody, in pertinent part, as follows:

> **§ 5325. Standing for partial physical custody and supervised physical custody**
>
> In addition to situations set forth in section 5324 (relating to standing for any form of physical custody or legal custody), grandparents and great-grandparents may file an action under this chapter for partial physical custody or supervised physical custody in the following situations:
>
> (1) where the parent of the child is deceased, a parent or grandparent of the deceased parent may file an action under this section;
>
> (2) where the relationship with the child began either with

the consent of a parent of the child or under a court order and where the parents of the child:

(i) have commenced a proceeding for custody; and

(ii) do not agree as to whether the grandparents or great-grandparents should have custody under this section; or

(3) when the child has, for a period of at least 12 consecutive months, resided with the grandparent or great-grandparent, excluding brief temporary absences of the child from the home, and is removed from the home by the parents, an action must be filed within six months after the removal of the child from the home.

23 Pa.C.S.A. § 5325.

Regarding the effect of adoption, the Domestic Relations Code further provides:

Any rights to seek physical custody or legal custody rights and any custody rights that have been granted under section 5324 (relating to standing for any form of physical custody or legal custody) or 5325 (relating to standing for partial physical custody and supervised physical custody) to a grandparent or great-grandparent prior to the adoption of the child by an individual **other than a stepparent**, grandparent or great-grandparent shall be automatically terminated upon such adoption.

23 Pa.C.S.A. § 5326 (emphasis added). In other words:

[W]hen a stepparent adopts a child…, grandparents and great-grandparents retain their right to seek physical or legal custody of the child, as well as retain any custody rights already awarded to them. Such rights are automatically terminated, however, when the child is adopted by an individual other than a stepparent, grandparent or great-grandparent.

*In re Adoption of M.E.L.*, ___ Pa. ___, ___, 298 A.3d 118, 122 n.2 (2023) (internal quotation marks omitted).

Instantly, the trial court determined that Maternal Grandparents had standing in this case, explaining:

> This [c]ourt recognizes that Grandparents are given special treatment in the child custody laws of Pennsylvania. That special treatment is set forth in 23 Pa.C.S.A. § 5324[3] and 23 Pa.C.S.A. § 5325. The natural birth parents to the Minor Children are [Father] and [Biological Mother]. [Biological Mother] passed away on July 5th, 2014. [M]aternal Grandparents are the parents of the natural birth mother, and are seeking visitation of the Minor Children pursuant to 23 Pa.C.S.A. § 5325(1). [F]ather remarried and is now married to…[A]doptive Mother[.] [Adoptive Mother] adopted the Minor Children on May 30, 2018. As noted above, 23 Pa.C.S.A. § 5325(1) provides that "(1) where the parent of the child is deceased, a parent or grandparent of the deceased parent may file an action under this section."
> … The subsequent adoption of the Minor Child[ren] by stepparent, [Adoptive Mother], does not preclude [Maternal Grandparents] from pursuing custody. Pursuant to 23 Pa.C.S.A. § 5326, a grandparent's standing is cut off only if the child is adopted by third parties who are not the stepparents or grandparents of the child. This [c]ourt finds that [Maternal Grandparents] have standing to seek partial physical custody and/or supervised physical custody in accordance with 23 Pa.C.S.A. § 5325(1).

(Trial Court Opinion at 7-8).

We agree with the court's analysis. Section 5325 makes clear that grandparents have standing to pursue partial physical custody or supervised physical custody where the parent of the child is deceased. **See** 23 Pa.C.S.A. § 5325(1). Further, Maternal Grandparents retained their right to pursue custody even after Adoptive Mother's adoption of Children because such

---

[3] Section 5324 also grants grandparents standing to pursue custody under certain circumstances not present in this case. **See** 23 Pa.C.S.A. § 5324(3).

- 9 -

adoption was a stepparent adoption. *See* 23 Pa.C.S.A. § 5326; *In re Adoption of M.E.L., supra*.

Regarding Parents' constitutionality claims, we initially note that when a party challenges the constitutionality of a statute in a case where the Commonwealth is not a party, the challenging party "is required to notify the State Attorney General Office so that the Attorney General has the opportunity to be heard on the issue." *In re J.Y.*, 754 A.2d 5, 11 (Pa.Super. 2000), *appeal denied*, 564 Pa. 712, 764 A.2d 1070 (2000). *See also* Pa.R.C.P. 235 (requiring notice to Attorney General in any proceeding in which Act of Assembly is alleged to be unconstitutional where Commonwealth is not party to case); Pa.R.A.P. 521(a) (explaining that it shall be duty of party who draws into question constitutionality of any statute in any matter in appellate court to which Commonwealth is not party upon filing of record, or as soon thereafter as question is raised in appellate court, to give immediate notice to Attorney General of Pennsylvania of existence of question, together with copy of pleadings or other portion of record raising issue, and to file proof of service of such notice). "Failure to do so…results in waiver of the claim." *In re J.Y., supra*.

Notice to the Attorney General is necessary only in facial challenges, and not as-applied challenges to the constitutionality of a statute. *Kepple v. Fairman Drilling Co.*, 532 Pa. 304, 615 A.2d 1298 (1992). Nevertheless, a litigant's characterization of an argument as being facial or "as applied" is not

controlling.  *See Potts v. Step by Step, Inc.*, 26 A.3d 1115 (Pa.Super. 2011).  "A facial challenge to the constitutionality of a statute is a claim alleging that a statute suffers an 'ineluctable constitutional deficiency.'" *Commonwealth v. Hairston*, ___ Pa. ___, ___, 249 A.3d 1046, 1054 n.5 (2021), *cert. denied*, ___ U.S. ___, 142 S.Ct. 598, 211 L.Ed.2d 371 (2021). "By contrast, an as-applied challenge to the constitutionality of a statute is one asserting that the statute, even though it may generally operate constitutionally, is unconstitutional in a [party's] particular circumstances." *Id.*

Instantly, we must discern the nature of Parents' constitutional claims. Parents complain that Section 5325(1) treats a fit adoptive and widowed parent differently than it treats fit biological parents.  (*See* Parents' Brief at 15-16).  Parents further allege that the exception set forth in Section 5326 "severely limits and infringes upon prospective adoptive parents' rights and obligations as a parent." (*Id.* at 17).  Read together, Parents essentially argue that these statutes **on their face** treat a fit, married adoptive and widowed couple differently than other fit parents concerning the fundamental right to parent their children.  Thus, we construe Parents' arguments as a facial challenge to the constitutionality of Section 5325(1) and 5326. *See Hairston, supra*.  Parents did not, however, provide proper notice of their constitutional arguments to the Attorney General's Office.  Thus, Parents have waived their constitutional claims. *See In re J.Y., supra*.

In their third issue, Parents argue that the trial court found certain custody factors to favor Maternal Grandparents contradictory to the evidence and testimony presented at trial. Parents claim the court erroneously found factor one (which party will permit more frequent and continuing contact) to favor Maternal Grandparents. Parents insist they have consistently included Maternal Grandparents in events and special occasions, even in the midst of the COVID-19 pandemic. By contrast, Parents complain that Maternal Grandparents did not invite Parents to gatherings but then later lamented that Parents were "missed" from events they were never invited to. Regarding the seventh factor (the well-reasoned preference of Children), Parents assert the court found this factor did not favor either party. Nevertheless, Parents emphasize that Children testified that they are currently involved in numerous activities and Children did not want court-ordered visitation with Maternal Grandparents. Rather, Children testified they wanted to visit Maternal Grandparents on their own terms.

Parents also challenge the court's finding on factor eight (attempts of one party to turn Children against the other party) to favor Maternal Grandparents. Parents maintain the court relied on a conversation where Children asked for a pool, and Father said they could not afford a pool because of the litigation. Although Father admits this statement demonstrated "a lack of judgment on his part" (**see** Parents' Brief at 28), Parents contend the court improperly relied on this statement to weigh this factor in favor of Maternal

Grandparents. Parents further insist the court improperly evaluated factor thirteen (the level of conflict between the parties and the willingness and ability of the parties to cooperate) in favor of Maternal Grandparents. Parents proclaim that Maternal Grandparents are also to blame for the level of conflict between the parties. Parents suggest that they have attempted to restore the relationship, but Maternal Grandparents have allowed the conflict to continue.

Additionally, Parents maintain the court erred in finding the parent-child relationship would not be affected by an award of custody to Maternal Grandparents. Parents posit that Maternal Grandparents have consistently undermined Parents' authority. Parents submit that Maternal Grandparents question Parents' decisions regarding Children, and doing so creates a rift in the parent-child relationship. Finally, Parents complain the court improperly found that awarding Maternal Grandparents partial custody would serve Children's best interests. Parents insist that family counseling is necessary and will be helpful in resuming Children's visits with Maternal Grandparents.[4] Parents claim that Maternal Grandparents have taken actions in the past that did not serve Children's best interests. Under the totality of all custody factors, Parents conclude that court-ordered visitation is not in Children's best interests, and this Court must grant relief. We disagree.

The Child Custody Act provides:

### § 5328. Factors to consider when awarding custody

_____

[4] Parents elaborate on this claim in their fourth issue on appeal.

- 13 -

**(a)   Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1)   Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2)   The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3)   The parental duties performed by each party on behalf of the child.

(4)   The need for stability and continuity in the child's education, family life and community life.

(5)   The availability of extended family.

(6)   The child's sibling relationships.

(7)   The well-reasoned preference of the child, based on the child's maturity and judgment.

(8)   The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9)   Which party is more likely to maintain a loving, stable, consistent and nurturing

relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

\* \* \*

**(c) Grandparents and great-grandparents.—**

(1) In ordering partial physical custody or supervised physical custody to a party who has standing under section 5325(1) or (2) (relating to standing for partial physical custody and supervised physical custody), the court shall consider the following:

(i) the amount of personal contact between the child and the party prior to the filing of the action;

(ii) whether the award interferes with any

> parent-child relationship; and
>
> > (iii) whether the award is in the best interest of the child.

23 Pa.C.S.A. § 5328(a), (c)(1).

This Court has explained:

> [I]n the recent past, grandparents have assumed increased roles in their grandchildren's lives and our cumulative experience demonstrates the many potential benefits of strong inter-generational ties. Thus: While acknowledging the general benefits of these relationships, we cannot conclude that such a benefit always accrues in cases where grandparents force their way into grandchildren's lives through the courts, contrary to the decision of a fit parent. In contrast, however, we refuse to close our minds to the possibility that in some instances a court may overturn even the decision of a fit parent to exclude a grandparent from a grandchild's life, especially where the grandparent's child is deceased and the grandparent relationship is longstanding and significant to the grandchild.
>
> > * * *
>
> Except under unusual circumstances, no child should be cut off entirely from one side of [his or her] family. [V]isits with a grandparent are often a precious part of a child's experience and there are benefits which devolve upon the grandchild from the relationship with his grandparents which he cannot derive from any other relationship. If animosities continue between the parties, and result in adverse [e]ffects on [the child] …, a visitation order may be revised, even to the extent of retracting visitation.

*K.T. v. L.S.*, 118 A.3d 1136, 1161 (Pa.Super. 2015) (internal citations, quotation marks, and emphasis omitted). Thus, Pennsylvania has a "strong public policy favoring grandparent involvement in a child's life." *Id.* at 1164. The statutory presumption favoring an award of custody to parents over third-

parties is inapplicable where grandparents are seeking only partial physical custody. **Id.** at 1159 (citing 23 Pa.C.S.A. § 5327(b) and explaining presumption in cases concerning **primary** physical custody).

Instantly, the trial court analyzed each of the custody factors under Section 5328(a) in making its decision. Regarding the first custody factor, the court explained that for the majority of Children's lives, they spent considerable time with Maternal Grandparents. When biological mother died, Maternal Grandmother assumed the role of mother so that Father could work. Maternal Grandmother woke up at 4:30 a.m. to help Children get ready for school, and she helped with meals.

Around late 2020, disagreements arose among the parties, and Father and Adoptive Mother essentially ceased Children's contact with Maternal Grandparents. The court did not accept Parents' position that if there was no custody case, then they would permit Children to see Maternal Grandparents similar to the contact that had existed previously. Parents' decision to restrict contact between Children and Maternal Grandparents during the pendency of the custody action directly contradicts that position. Thus, the court found this factor favored Maternal Grandparents. (**See** Trial Court Opinion at 9-11).

The court found the second factor as neutral where no past or present abuse has taken place. (**See id.** at 11). The parties stipulated that the third custody factor was neutral, and the court agreed that it was neutral. (**Id.** at 12). The court further found factor four was neutral, stating: "While the

[c]ourt recognizes that the Minor Children spend the majority of their lives with [Parents], it is clear that both parties are dedicated to providing stability and continuity in the Minor Children's lives." (*Id.* at 13). The court also found the fifth custody factor as neutral, as Children have extended family on both Father's side and Maternal Grandparents' side of the family. (*Id.*) The parties stipulated that the sixth custody factor was neutral, and the court agreed. (*Id.* at 13-14).

With respect to factor seven, the court noted that J.W.M. had positive things to say about his Maternal Grandparents and spending time with them. H.K.M. and C.R.M. had negative things to say about Maternal Grandparents, specifically concerning the pending custody action. H.K.M. and C.R.M. further indicated that they did not want to be forced by a court order to visit with Maternal Grandparents. Nevertheless, the court found that H.K.M. and C.R.M. seemed to be influenced by Father and Adoptive Mother. Specifically, the court stated: "The statements made by the children were all similar to not only their siblings' testimony, but to that of Father and Adoptive Mother. Thus, it is difficult to determine if the Minor Children's opinions are entirely well-reasoned, specifically in regard to [H.K.M.] and [C.R.M.]" (*Id.* at 15). The court found factor eight to favor Maternal Grandparents, where Children seem to have been heavily influenced by Parents in their perceptions of Maternal Grandparents. Notably, the court found that "[Parents] have likely aided in the Minor Children's negative feelings towards [Maternal Grandparents]." (*Id.*

at 15-16).[5]

The court found factor nine neutral, as both parties are able and willing to maintain a loving, stable, consistent, and nurturing relationship with Children. (Trial Court Opinion at 16-17). The court also found factor ten neutral, as both parties can attend to and intend to support Children's present and future physical, emotional, developmental, educational, and special needs. (*Id.* at 17). The parties stipulated that factor eleven was neutral, and the court agreed given that the parties live approximately 20 minutes from each other. (*Id.* at 18). The parties also stipulated to factor twelve being neutral, as both parties can make appropriate child-care arrangements. (*Id.*)

The court decided factor thirteen favored Maternal Grandparents. There is a very high level of conflict between the parties, and the court found the animosity towards Maternal Grandparents is misplaced. (*Id.* at 18-21). The parties stipulated that factor fourteen was neutral, as there were no allegations of drug or alcohol abuse by either party. (*Id.* at 21). Regarding factor fifteen, the court found that no testimony was provided to demonstrate a concern surrounding the care of Children based on the mental or physical condition of a party. (*Id.*)

---

[5] Dr. Menta specifically testified that Children have been heavily influenced by Parents' views in this case. Dr. Menta described Parents as having shared too much information with Children. Dr. Menta agreed that "indoctrination" is an appropriate word to describe Parents' influence over Children in this case. (*See* N.T. Trial, 3/8/23, at 122, 141, 145-46).

The court considered Dr. Menta's custody evaluation as it related to factor sixteen. The court agreed with Dr. Menta's recommendation for Maternal Grandparents to have unsupervised partial physical custody of Children once a month for a period of four hours. Dr. Menta further recommended participation in family counseling. The court emphasized that Children will never have the opportunity to form a life-long bond with their Biological Mother, and the benefits of having a relationship with Maternal Grandparents will help Children build a loving memory of their late mother. (*Id.* at 22).

In addition to the sixteen custody factors, the court considered the three factors under Section 5328(c). The court decided: (1) Maternal Grandparents had maintained consistent contact with Children prior to the Parents' restriction of such contact following the 2020 holiday season; (2) an award of custody to Maternal Grandparents will not interfere with the existing parent/child relationships, as Maternal Grandparents are seeking only minimal, monthly visitation with Children; and (3) an award of partial physical custody to Maternal Grandparents serves Children's best interests. (*Id.* at 23-25).

Our review of the record demonstrates that the court carefully considered all relevant factors when making its decision to award Maternal Grandparents partial physical custody for four hours once a month. *See* 23 Pa.C.S.A. § 5328(a), (c)(1). Parents essentially invite this Court to reweigh

the factors in their favor, which we will not do. ***See M.J.M., supra***. We emphasize Dr. Menta's expert opinion that periods of partial physical custody with Maternal Grandparents will serve Children's best interests. (***See*** N.T., 3/8/23, at 143). On this record, we see no abuse of discretion in the court's custody decision. ***See id.*** Therefore, Parents' third issue on appeal merits no relief.

In their fourth issue, Parents argue that the court did not order family counseling to begin before Children resume visitation with Maternal Grandparents. Despite expert testimony which favors having some family counseling prior to beginning visits, Parents assert that the court failed to institute such benchmarks. Parents insist that Children should not begin visitation with Maternal Grandparents prior to the start of counseling in light of the anger and conflict among the parties. Parents conclude the court erred by failing to require specific benchmarks to be met in family counseling prior to Children beginning visitation with Maternal Grandparents, and this Court must grant relief. We disagree.

Preliminarily, we observe:

> As a general rule, an actual case or controversy must exist at all stages of the judicial process, or a case will be dismissed as moot. An issue can become moot during the pendency of an appeal due to an intervening change in the facts of the case or due to an intervening change in the applicable law. In that case, an opinion of this Court is rendered advisory in nature. An issue before a court is moot if in ruling upon the issue the court cannot enter an order that has any legal force or effect. …

* * *

> [T]his Court will decide questions that otherwise have been rendered moot when one or more of the following exceptions to the mootness doctrine apply: 1) the case involves a question of great public importance, 2) the question presented is capable of repetition and apt to elude appellate review, or 3) a party to the controversy will suffer some detriment due to the decision of the trial court.

*In re D.A.*, 801 A.2d 614, 616 (Pa.Super. 2002) (*en banc*) (internal citations and quotation marks omitted).

"The concept of mootness focuses on a change that has occurred during the length of the legal proceedings." *In re Cain*, 527 Pa. 260, 263, 590 A.2d 291, 292 (1991). "If an event occurs that renders impossible the grant of the requested relief, the issue is moot and the appeal is subject to dismissal." *Delaware River Preservation Co., Inc. v. Miskin*, 923 A.2d 1177, 1183 n.3 (Pa.Super. 2007). Importantly, "mootness, however it may have come about, simply deprives us of our power to act; there is nothing for us to remedy, even if we were disposed to do so. We are not in the business of pronouncing that past actions which have no demonstrable continuing effect were right or wrong." *Spencer v. Kemna*, 523 U.S. 1, 18, 118 S.Ct. 978, 988, 140 L.Ed.2d 43 (1998).

Instantly, following the court's custody order, Parents filed a petition seeking to stay the trial court's order pending appeal. The court denied Parents' requested relief on May 18, 2023. Parents did not seek a stay of the court's order in this Court. Therefore, assuming the parties have complied

with the court's March 29, 2023 order, Maternal Grandparents have already begun exercising their periods of partial physical custody since June 2023. As such, this issue is moot, because even if Parents' issue had merit, we cannot undo the periods of partial custody that have already occurred and order certain "benchmarks" to occur first. *See id.*; ***Delaware River Preservation Co., Inc., supra***. Parents allege no exceptions to the mootness doctrine, and we do not see any of the exceptions as applicable to this particular issue. ***See In re D.A., supra***.

Moreover, even if the issue presented is not moot, it would not entitle Parents to relief. Here, the court stated:

> In summary, this [c]ourt finds that it is in the Minor Children's best interest to maintain a relationship with [Maternal Grandparents]. However, due to the level of anger that the Minor Children currently harbor towards [Maternal Grandparents], the [c]ourt finds that an immediate transition into partial custody/visitation with [Maternal Grandparents] is not appropriate without some support by professional counselors. The [c]ourt finds that counseling prior to the implementation of periods of partial physical custody will help to diffuse that anger and aid in the transition.
>
> An appropriate Order will be entered.

(Trial Court Opinion at 27). In the order granting Maternal Grandparents partial physical custody, the court directed:

> That within ten (10) days of the date of this Order, Maternal Grandparents and Parents shall contact Jennifer Hinkle-Stanley, MS, or Bethanne Petrlak, LMT and schedule Family Counseling to include [Maternal] Grandparents, Parents, and the Minor Children. The purpose of the Family Counseling is to address communication skills between all

parties, the implementation of reasonable and necessary boundaries, and the anger issue as depicted by the Minor Children relating to the filing of the Custody Action. Counsel for the parties shall communicate with one another to determine which counselor is most able to address these issues in the immediate future and shall select the counselor. Costs relating to the Counseling shall be shared ½ by the Parents and ½ by the Maternal Grandparents.

(Order, filed 3/29/23, at ¶ 5).

Notably, the court entered its order on March 29, 2023. The court did not order Maternal Grandparents to begin their periods of partial physical custody until the third Saturday of June 2023, unless the parties mutually agreed on a different date of the month. (*See* Order at ¶ 6). The court contemplated that the parties could schedule family counseling in early April 2023, and they would have over two months to undergo family counseling sessions prior to Maternal Grandparents' ability to exercise their partial physical custody rights. The court's order was directly in line with the court's opinion that family counseling would benefit all parties involved. Parents cite no law that the court was required to set specific "benchmarks" before visitation would begin, and Parents do not specify on appeal what those "benchmarks" would be. Further, Dr. Menta opined that therapy could happen at the same time as visitation and was not a necessary precursor to beginning Maternal Grandparents' periods of partial custody. (*See* N.T., 3/8/23, at 164, 171). Thus, even if Parents' fourth issue was not moot, we would see no error with the court's order. Accordingly, we affirm.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

FILED: <u>1/4/2024</u>